NORMAN Y. BRINTNALL *v.* THE SARATOGA AND WHITEHALL RAILROAD COMPANY.

*Pleading.     Variance.     Supreme Court.     Practice.     Railroads. Deposition.     Common Carrier.*

When the declaration contains several counts, setting out the cause of action in different ways, to meet any differences that may arise on the proofs or different views that may be taken of the legal effect of the language of a contract, it is the duty of the county court, when any question is there made upon the matter, to direct the attention of the jury and confine the recovery to such counts as the proof sustains; but when no question is raised thereon, and the court is not called upon to distinguish between the different counts and the special applicability of the evidence to each, and no objection is made to the admissibility of evidence upon particular counts, no exception can be taken, because the court does not voluntarily assume such duty.

It is a general rule that the supreme court will not revise any questions except such as appear to have been raised in the court below; and this rule applies with peculiar propriety to questions of variance, (unless the variance appears of record, and is of such a character that the judgment would not protect the parties in reference to the matter actually litigated,) as such questions, if raised in the court below, can generally be removed, either by further proof or by amendment.

A box of goods, marked and directed to B., at Boston, was delivered by B.'s agent, at Saratoga Springs, to a railroad company, to be transported over their road on its way to Boston.  The defendants gave a receipt therefor in these words: "Received, Saratoga Springs, September 17, 1855, from B., in apparent good order, one Box, to forward to Castleton, for B., Boston, Mass., at freight of —— per 100 lbs. weight."  It appeared that Castleton

was the terminus of their road toward Boston, and that with the Rutland and Washington Railroad, with which it connected at Castleton, and other roads, a line of railroad communication was formed between Saratoga Springs and Boston; *Held,* that the defendants were only liable for the safe delivery of the box of goods at the end of their own road in Castleton, and that it was their duty there to deliver it over to the railroad forming the next chain in the line to Boston; and that it was sufficient to establish, *prima facie,* a right of recovery on the part of B., in an action on the case against the defendants, for negligence as common carriers, for the loss of the box of goods, to show its delivery to them, and that it had not arrived at Boston, and was lost.

B. was duly notified to be present at the taking of depositions on behalf of an adverse party, and was present, by his attorney, at the appointed time and place, when the deposition of M. was taken, pursuant to the notice, the adverse party appearing only by P., by whom the examination was conducted in its behalf, and who was not its attorney *of record* in the cause in which the deposition was to be used. Immediately at the close of taking it, a duplicate of the deposition was taken by the same magistrate, to be used in the same case, at the request of B., P. being verbally notified by the magistrate and present, but declining to appear or act in behalf of the adverse party upon the taking of the duplicate deposition, or to consent that B. might have the benefit of the original; *Held,* that the notice of the taking of the duplicate deposition was not sufficient under the statute, (No. 4, of 1854,) and it was therefore inadmissible.

CASE against the defendants for negligence as common carriers. The first count of the declaration was substantially as follows: that on the 17th day of September, 1855, the defendants were, and ever since have been, common carriers of goods for hire, from Saratoga Springs, New York, to Castleton, Vermont; that the plaintiff, on that day, at Saratoga Springs, caused to be delivered to the defendants, who then and there accepted it, a box of goods, containing five hundred yards of lace, one hundred boxes of hosiery, five hundred peices of white goods, and other merchandise, of the value of fifteen hundred dollars, belonging to the plaintiff, to be carried from Saratoga Springs to Castleton, for a certain reasonable reward to be paid by the plaintiff to the defendants; and that the defendants did not so carry it from Saratoga Springs to Castleton, nor at Castleton deliver it for the plaintiff, but that by their negligence and carelessness, the box, with its contents, was lost. The other counts were substantially the same, with these exceptions; the third count alleged that the box of goods was to be carried by the defendants

Brintnall *v.* S. & W. R. R. Co.

from Saratoga Springs to Boston, Mass., and that they were common carriers between those points; the fourth count was the same, after substituting "Charlestown, near Boston," in place of "Boston;" and the fifth count set forth that the defendants were common carriers between Saratoga Springs and Castleton, and had business connections with other common carriers between Castleton and Charlestown and Boston; that the box of goods was directed to the plaintiff at Boston, and was delivered to the defendants to be sent by them to Boston, and to the plaintiff at Boston, and that the defendants received the same to forward to Castleton for the plaintiff at Boston, to be from Castleton forwarded by the defendants by said other common carriers between Castleton and Charlestown and Boston; yet that the defendants did not carry the same to Castleton, or there deliver it to, or forward it by, any other carrier to the plaintiff, or to Charlestown and Boston, but by reason of their negligence and carelessness the same was lost.

The defendants pleaded the general issue, and the cause was tried, by jury, at the March Term, 1858, of the Rutland county court, — PIERPOINT, J., presiding.

That the defendants were common carriers, as alleged in the declaration, was admitted on the trial. The plaintiff introduced evidence tending to prove the following facts: that at Saratoga Springs, on the 17th day of September, 1855, he (by his clerk and agent) delivered to the defendants the box of merchandise described in the declaration, marked and directed to the plaintiff at Boston, Massachusetts, where he resided, for transportation by the defendants over their road on its way to Boston; that the defendants received the box and gave the plaintiff's agent and clerk a receipt therefor, as follows: .

"Rec'd, Saratoga Springs, Sept 17, 1855, in apparent good order, 1 box, to forward to Castleton, for N. Y. Brintnall, Boston, Mass., at freight of —— per 100 lbs. weight. ·

GEO. W. COLE, agent S. & W. R. R. Co."

That the box did not arrive at its place of destination; that it had not been received by the plaintiff at Boston, or elsewhere, but was lost; and that the defendants' road, the Rutland and Washington, the Rutland and Burlington, the Cheshire and

Fitchburgh and connecting roads, formed a line of railroad communication between Saratoga Springs and Boston.

The plaintiff offered the deposition of A. W. Morrison, which was objected to by the defendants but admitted by the court. The caption of the deposition was as follows:

"The foregoing deposition is taken at the request of Norman Y. Brintnall, to be used in a cause to be heard and tried by the county court to be holden at Rutland within and for the county of Rutland, in the State of Vermont, on the 2d Tuesday of March, 1858, in which case Norman Y. Brintnall is plaintiff, and the Saratoga and Whitehall Railroad Company are defendants. The defendant being out of the State of Vermont is the cause of taking this deposition. The adverse party was notified and did attend, if in the opinion of the court the following facts constituted a sufficient notice and attendance:

Due notice was given to the said Brintnall by the said Saratoga and Whitehall Railroad Company to be present at the time and place when and where the foregoing deposition was taken, to be present at the taking of depositions to be used in the above mentioned cause, and at said time and place the said Saratoga and Whitehall Railroad Company appeared by A. Pond, and the said Norman Y. Brintnall by Charles S. Williams, and a deposition, of which the foregoing deposition is a duplicate, was taken by the said Saratoga and Whitehall Railroad Company, the said A. Pond conducting the examination in behalf of said railroad company, who appeared before me only by him as their agent and attorney. At the said time and at the close of the taking of said deposition, the foregoing deposition was taken at the request of the said Brintnall, the said A. Pond being notified and present, but declining to appear or act in behalf of said railroad company upon the taking of this duplicate deposition, or to consent that the said Brintnall might have the benefit of the deposition of which the above is a duplicate, which had been taken immediately before, claiming that no sufficient notice had been given to the said railroad company to authorize the taking of this deposition. Certified by Samuel B. Peck, justice of the peace."

A Pond, named in the foregoing caption, was not the defendants' attorney of record in this suit.

The defendants introduced evidence tending to prove that on the receipt of the box of goods it was duly forwarded on its way to Boston, according to its direction; that it was transported by the defendants over the road to Castleton, and there delivered to the Rutland and Washington Railroad Company in the regular course of its business, and that the Rutland and Washington Railroad formed the next link to the defendants in the chain of railroad communication from Saratoga to Boston.

The court charged the jury that if they found that the defendants received the box of goods, as claimed by the plaintiff, then the defendants were bound to transport it to Castleton, and there deliver it to the Rutland and Washington Railroad Company, it being admitted that this railroad was the next link in the chain of ordinary communication between Saratoga and Boston; that if the jury were satisfied that the goods were lost, then it was incumbent on the defendants to satisfy them that the goods were so delivered at Castleton, and that if the defendants did so deliver the goods at Castleton, that was all they were required in this case to do. But that if the defendants did not so deliver the goods at Castleton, they were liable in this case, and the plaintiff was entitled to a verdict for their value, unless the defendants were discharged from their liability as common carriers by the " act of God or the public enemy," or by showing that they entered into some special contract in relation to the conveyance of these goods, limiting their liability, or that the plaintiff practised some fraud upon the defendants in relation to the transaction that prevents his recovery.

The jury returned a verdict for the plaintiff for the value of all the goods.

To the foregoing decisions and charge of the court the defendants excepted.

*Linsley & Prout*, for the defendants.

1. The duplicate deposition of Morrison was not taken in accordance with the act of 1854, (No. 4.) It was taken at Saratoga Springs, where the defendant had its legal existence and does its business. The notice, therefore, should have been given to the defendant; notice to the attorney in attendance was not

sufficient. If the case is one that justifies notice to the attorney on the ground that the adverse party resided out of the State, it should have been given to the attorney *of record* in the cause, by summons, etc.; sec. 2. No. 4, act of 1854.

Again, the notice given was not reasonable; *Stephens* v. *Thompson et al.*, 28 Vt. 77.

2. The evidence in the case does not prove the contract as alleged in the different counts of the declaration. The jury returned a general verdict upon all the counts.

The first and second counts charge the contract to be to carry to Castleton; the third, to carry to Boston; the fourth, to Charlestown; the fifth, to forward to Castleton and from thence to be forwarded by other carriers, by the defendant, to the plaintiff at Charlestown and Boston. To entitle the plaintiff to recover on all the counts he must prove the contract as laid in each; 2 Greenleaf sec. 299; *Tucker* v. *Cracklin*, 3 C. L. 394; REDFIELD on Railways (note) p. 284.

The evidence does not warrant the general charge given; it was made applicable to all the counts, without reference to the question whether such was the contract or not, or the effect of the receipt qualifying the defendants' undertaking. The receipt clearly indicates that the defendants did qualify their liability; it shows that they undertook to forward only to Castleton, and excludes the idea of any responsibility, as carriers, beyond that point.

The proof does not obviously meet all the counts, especially the third and fourth, nor the last count, under which the recovery must be had, if any, as the contract is not alleged in that count to be to deliver to other carriers at Castleton, but "*to be forwarded by the defendant, by other carriers.*" The legal conclusion from the facts stated in this count, as well as the two preceding, is that the defendants are liable for the loss of the goods, *as carriers*, if lost anywhere on the route to Boston; *Tucker* v. *Cracklin*, 3 C. L. 394; *Vail* v. *Strong*, 10 Vt. 457.

The goods being marked and directed to Boston is not decisive, and is no evidence of any undertaking to deliver at that place, as the undertaking is limited by the receipt; REDFIELD on Railways (note) 284, 283, 287; 6 Hill 157; 23 Vt. 209.

The case stands no better upon the first two counts, as those counts do not set forth the contract to be to forward to Castleton, *and deliver to the Rutland and Washington Railroad.*

So that the charge, as given, corresponds with neither count of the declaration.

3.   The court assume, in the charge, that the defendants were bound to deliver to the connecting road. Upon the facts, this was erroneous. The liability of the defendants rests upon the receipt, and the jury should have been so instructed. In the receipt they do not undertake to deliver to the Rutland and Washington Railroad. The legal liability arising, therefore, is to deliver to the *owner*, and the obligation to deliver to the connecting road cannot be engrafted on the contract by parol; *May* v. *Babcock*, Ohio 817; Angell on Carriers 213, 214, 3 Conn. 9 and 14.

There was no evidence of usage or custom affecting this point.

4.   The jury were told that if they were satisfied that the goods was lost, then it was incumbent on the defendants to satisfy them that they were delivered to the Rutland and Washington Railroad, at Castleton. Under this charge, if the jury were satisfied that the goods were lost on one of the lower roads, yet if the defendants were unable to show a delivery at Castleton to the Rutland and Washington Railroad, they were justified in returning the verdict they did. Their attention was not called to the effect of the receipt, limiting the defendants' liability.

The burden of proof was upon the plaintiff to show, either that the goods were lost upon the defendants' road, or that they failed to deliver them to the Rutland and Washington Railroad, as the jury should find the contract. Proof of the loss, unless it is confined to the defendants' road, has no tendency to show that the box was not delivered to the Rutland and Washington Railroad, as such evidence is in no way inconsistent with the supposition that they were lost on the Fitchburg road. The rule laid down by the court, as applied to this case, makes the defendants liable for the negligence of others. If the destination of the goods had been New Orleans, proof that they did not arrive there would make the defendants responsible on this principle; *Sprague* v. *Smith*, 27 Vt. 421.

The declaration is in case for negligence; 2 Chitty's Pl. pp. 651 and 356.

In assumpsit it would be sufficient to prove a delivery to the defendants, and thus make them account for the goods, but in *this* form of action the burden is on the plaintiff to show their loss in consequence of some nonfeasance or negligence of the defendants, notwithstanding its negative character; *Day* v. *Ridley*, 16 Vt. 48; Angell on Carriers, sec. 470, p. 404.

No evidence of this kind was introduced, except proof that the goods did not arrive at Boston. This was too remote.

Proof of the loss is not confined by the court even to the line of communication between Saratoga and Boston. If lost in the hands of a truckman between the depot at Boston and the plaintiff's place of business, the defendants would be liable under the charge.

*Pierpoint & Nichols*, for the plaintiff.

There was no error in admitting Morrison's deposition.

Both parties were regularly before the magistrate, upon legal notice, for the purpose of taking the deposition of the witness to be used in the cause at the term at which it was tried. And being so before the magistrate, it was the right of the parties to have the deposition so taken that it could be used by either party, and in this case the deposition was so taken and certified.

POLAND, J. The first question made by the defendants' counsel is, that the proof in the court below did not support the declaration, that is, that it did not prove the contract or undertaking of the defendants with the plaintiff as alleged in either count. It was said in the argument that where the declaration contained several counts setting out the plaintiff's cause of action in different ways, to meet any differences that might arise on the proof, or different views of the legal effect of the language of a contract, it would be the duty of the court to direct the attention of the jury, and confine the recovery, to such counts as the proof sustained.

This is undoubtedly true when any such point is made, and when the attention of the court is called to the matter, but when

no question is raised to the court, and they are not called upon to distinguish between the different counts and the special applicability of the evidence to each, and no objection is made to the admissibility of the evidence upon particular counts, it is not usual for the court to voluntarily assume any such duty, and no exception can be taken because they do not.

The question whether the proof strictly supported any one of the counts in the declaration, we do not regard as properly arising upon these exceptions, for no such question appears to have been made in the court below.

It is a general rule that the court will not revise any questions except such as appear to have been raised in the county court, and this rule applies with peculiar propriety to questions of variance which, if raised in the county court, can generally be removed either by further proof or by amendment.

To allow a party to raise such a question for the first time in the supreme court, would operate usually with great injustice. It has been repeatedly decided by this court, that it cannot be allowed, unless the variance appears of record, and is of such a character that the judgment would not protect the parties in reference to the matter actually litigated; *Peck* v. *Thompson et al.*, 15 Vt. 637; *Hard* v. *Brown*, 18 Vt. 87.

It appears by the declaration, and also from the exceptions, that the plaintiff claimed that the receipt given by the defendants for the box of goods, amounted to an undertaking by them to transport it to Boston, and that they would be liable for its loss, though the loss occurred beyond the termination of the defendants' road at Castleton, upon one of the other roads in the line between Castleton and Boston. The defendants claimed that they were only liable for its safe delivery at the end of their own road, at Castleton. The county court, upon this point, held with the defendants, in conformity with what we understand to be the general current of American decisions.

It is said, however, that the court erred in assuming, either with or without proof, that the defendants' undertaking and obligation was to deliver over the box to the Rutland and Washington road, the next road in the line to Boston; that no such thing could be inferred from the receipt of the defendants, and that no

such thing could legally be proved aside from the receipt. It is not in terms stated in the receipt where, or to whom, the box was to be delivered, but we think it is apparent from the language of the receipt that the box was understood to be destined for Boston, and to be forwarded there by the line of railroad of which the defendants' road formed a part.

It is said that the marks upon the box are not to be understood as a direction of it, but as merely giving the residence of the owner, like a name and residence marked upon a trunk, which ordinarily furnish no indication of its destination. But such marks upon a box of merchandise forwarded by railroad or steamboat, usually, if not universally, indicate its destination in that transit, while the same marks permanently placed upon a trunk, indicate merely the residence of the owner, and remain the same, whether going from or toward his place of residence. Such being the known and understood destination of this box of goods, although the defendants' receipt says nothing as to where or to whom they were to deliver it, the defendants' duty would be to deliver it to the carriers on the connecting road, to be forwarded to its ultimate destination, because this is the usual and ordinary course of business in such cases. If any question had arisen as to this in the county court, evidence would have been admissible to show the ordinary course of business, but it does not appear that any such question was made, or any necessity for such proof, for it appears to have been understood by all parties that the box was received by the defendants to be sent forward to Boston, by railroad, and that they were to deliver it over to the Rutland and Washington road at Castleton, the point of connection. The county court were then abundantly justified in charging the jury as they did, as to the defendants' duty to deliver the box over to the next carrier in the line, and the exceptions do not fairly show any exception to the charge in that respect.

The only point fairly raised by the exceptions to the charge, which is relied upon here, is in reference to the proof incumbent on the plaintiff to make, to establish negligence, *prima facie*, against the defendants, so as to throw upon them the burden of showing the box out of their hands into those of the next carrier. The duty of the defendants was to safely transport the box to

Castleton, the end of their road, and then deliver it to the next carrier. The negligence alleged in the declaration, the breach of duty complained of, is, that they did not do this; and, of course, in order to establish a right of recovery against the defendants, there must be some proof offered to prove such negligence. It is an affirmative allegation by the plaintiff, and the burden is upon him, though it involves the proof of a negative. It is not enough for the plaintiff to show the box into the hands of the defendants, and throw the burden upon them to prove that they delivered it to the plaintiff, or at its proper destination, under their contract of carriage. But in such cases a plaintiff is only bound to give such proof of the loss as the nature of the case admits of, and fairly is in his power to bring. The fact that he is thus really called upon to prove a negative is not to be lost sight of, nor that ordinarily after the delivery of goods to a carrier, and especially to a railway company, the means of proving what has been done with them, or what has become of them, are wholly within their own power and knowledge, and out of that of the plaintiff. The plaintiff can, and ought always to be required to show, that he has not received his property; that it has been lost. The county court required this to be done by the plaintiff, and held that if this was shown, and that the goods never reached Boston, their ultimate destination, then the burden was on the defendants to show the box out of their hands.

We have had some hesitation and doubt upon this point, but upon more consideration we are satisfied, under the circumstances, that the instruction was correct.

The argument is, that showing the box did not arrive at Boston, the end of the route, but was lost, does not prove or tend to prove the defendants did not deliver it to the next carrier, because it might have been lost between Castleton and Boston. It must be admitted that it is very inconclusive proof of the fact, but still we think it has some tendency to establish it. The box is proved into the hands of the defendants; there is no evidence that anybody else ever had it, or that it was ever in the possession of any other carrier in the line. The usual and ordinary course of things, what is always expected, and what generally proves true is, that goods forwarded upon such a line arrive at their destina-.

tion, and therefore the fact that goods do not arrive at one end of the line, is some evidence they were not sent from the other. It may be said that this reasoning would include the defendants' road as well as the rest of the carriers in the line, but the defendants are proved to have had the box, while there is no proof that either of the others ever did. But we place it upon the ground mainly that this was really all the proof the nature of the case permitted to the plaintiff, and that proof of a delivery by the defendants to the next road was a matter that was peculiarly within the power of the defendants, and not at all in the power of the plaintiff, unless the defendants and the connecting roads preserved evidence of the transfers of all freight from one road to the other.

It is well understood that in the carriage of freight over a long line, made up of several different roads, it is not usually exchanged from the cars of one road to those of another, but that each road furnish their proportion of cars, and they are run over the whole line. In such cases, unless the respective roads keep some record or evidence of the freight that in fact goes over their roads in this way, it would be next to impossible for the forwarder, in case of loss, to ever show where it occurred. If the respective roads do keep such evidence, then they have always the power to show freight out of their hands into that of the next in the line. In either event it seems just and reasonable that the road receiving the freight, or any other into whose hands it is proved, in case an ultimate loss is shown by the owner, should be required to show it out of their hands. These views seem to be supported by the case of *Day et al.* v. *Ridley et al.*, 16 Vt. 48. In that case the defendants, who were carriers, received of the plaintiffs a quantity of oil meal, to be carried by their boat from Burlington to Troy. The boat was capsized on the lake in a storm. A part of the casks of meal were landed at Essex, N. Y., and, as the case states, there was no evidence given what became of them. The defendants' counsel claimed that the burden of proof was on the plaintiffs to show that the meal was not delivered at Troy, its place of destination, and that for want of such proof the plaintiffs could not recover for this part of the goods. But the supreme court held that this was sufficient evidence to throw the burden upon the defendants.

Brintnall *v.* S. & W. R. R. Co.

WILLIAMS, Ch. J., who delivered the opinion, says, "it was necessary for the plaintiffs to give some evidence of loss, and thus far the burden of proof was on them. The burden of proof may be turned on the defendants, however, by slight proof."

The only remaining point arising upon the exceptions, is the correctness of the admission of Morrison's deposition.

The deposition purports on its face to be a deposition taken on behalf of the plaintiff, and was offered and admitted as such. In order to make it admissible, therefore, it must have been taken in pursuance of the provisions of our statute in relation to the taking of depositions. The act of 1854 requires that all depositions shall be taken with notice, and expressly provides that none shall be read in evidence unless notice be given as provided by that act. The notice required is either a personal notice to the adverse party by the magistrate taking the deposition, or by a citation served on the adverse party, or his attorney, in case the party lives out of the State.

We think this deposition was inadmissible for two reasons.

1. That Pond was not the attorney of the defendants in any such sense as authorizes a notice to be given to him. It must mean the attorney in the cause, and it is not claimed that Pond was, and if he was employed by the defendants to take a deposition, which is all that appears here, that was not enough.

2. We think the fair inference from the deposition is, that the notice to Pond was a verbal notice from the magistrate merely. It is clear from the statute that notice to an attorney can only be given by a citation, duly served, and that notice can only be given verbally to the party himself. We are unable to see how the legal question is varied by the particular circumstances under which this deposition was taken. The magistrate could not make a mere duplicate of the deposition evidence for the other party, except by taking it as the statute requires. We regret this result, as under the circumstances it would seem the defendants ought not to be allowed to object to the plaintiff using a copy of their own deposition, but we feel that it is unavoidable under the strict rules that have always been held upon the subject.

The judgment of the county court is reversed, and the case remanded for a new trial.