PHIFER & McBEE v. CAROLINA CENTRAL RAILWAY COMPANY.

*Railroads—Common Carriers—Negligence—Damages—Bill of Lading, stipulations in.*

1. A stipulation in a bill of lading, given by one of an associated through line of common carriers to transport goods beyond its own line, to the effect that if damage to the goods be sustained by the shipper, that company alone in whose custody the goods were at the time of the loss shall be answerable, is a reasonable one and consistent with public-policy; and the shipper who accepts it is bound by its terms and conditions, whether he reads it or not.

2. *Quære*—As to the extent of liability of common carriers by sea, and how far the same has been modified by act of Congress, which exempts the owner of a vessel from responsibility by reason of fire on board ship, unless caused by the negligence of such owner.

3. The stipulation for exemption from responsibility must be just and reasonable in the eye of the law, and hence it is not lawful to so stipulate for the negligence of the carrier or its agents.

4. The facts of this case do not show a copartnership, but merely an association between the lines of road—each undertaking to transport freight safely over its own road and to act as an agent in forwarding the same to the next connecting road.

(*Lindley* v. *Railroad*, 88 N. C., 547; *Phillips* v. *Railroad*, 78 N. C., 294, cited and approved).

CIVIL ACTION tried at Fall Term, 1882, of LINCOLN Superior Court, before *Graves, J.*

The defendant appealed from the judgment of the court below.

*Messrs. Wilson & Son* and *B. C. Cobb,* for plaintiffs.
*Mr. W. P. Bynum,* for defendant.

SMITH C. J.  The plaintiffs, in the month of September, 1880, placed in the custody of the defendant company at Lincolnton, for transportation over its and the associate roads and line of steamers, forming what is known as the "Seaboard Air-Line," and delivery to Hopkins, Dwight & Co., consignees at New York, in different lots, eighteen bales of cotton, taking at each time receipts or

bills of lading, of one of which the following is a copy, the others in all essential respects being similar:

CAROLINA CENTRAL RAILWAY COMPANY,

LINCOLNTON, N. C., September 25, 1880.

Received of Phifer & McBee, for transportation at company's convenience, as per marks and directions herein given, subject to the conditions stated upon this receipt, and to which, by the acceptance thereof the shipper assents, the following described bales of cotton:

| MARKS. | NUMBERS. | WEIGHT. Shippers. | | CONSIGNEE AND DESTINATION. | NUMBER OF BALES. |
|---|---|---|---|---|---|
| [M.] | | Road not responsible. | Copy. | Hopkins, Dwight & Co. New York. | Twenty-three |
| D. | | | | | 23 . B C |

To be shipped via S. A. L.

At through rate of $2.90 per bale.

———— ————, Agent.

On the reverse side of the receipt, among other printed conditions, was one in these words:

"It is further stipulated and agreed that in case of any loss, detriment or damage done to, or sustained by, any of the property herein receipted for during such transportation, whereby any legal liability or responsibility shall or may be incurred, that company alone shall be answerable therefor in whose actual custody the same may be at the time of the happening of such loss, detriment or damage; and the carrier so liable shall have the benefit of any insurance that may have been upon or on account of said goods."

"NOTICE.—In accepting this bill of lading, the shipper or other agent of the property carried expressly accepts and agrees to all its stipulations, exceptions and conditions."

It was shown and not controverted on the trial (if indeed such is not admitted in the paper bearing the signature of the respective counsel and set out in the transcript) that the goods were safely carried over the road of the defendant and delivered to the company whose road next connects with that of the defendant, and forms part of the line of the associated companies designated by the initial letters "S. A. L." on the receipt, and that thence they were also safely transported and delivered to the Old Dominion Steamship Company, the last link in the chain of communication, and were burned while on board of one of its steamers.

The complaint, containing two causes of action, charges in the first that the defendant, as a common carrier, for a valuable consideration contracted to carry the cotton from Lincolnton to New York over its own and the lines of other companies, using the latter as agencies of its own for this purpose; and in the second, that the defendant, as one of a partnership association of common carriers, formed by itself and the Raleigh & Augusta Air-Line Railroad, the Raleigh & Gaston Railroad, the Seaboard & Roanoke Railroad and the Old Dominion Steamship Company, and constituting the SEABOARD AIR-LINE, on behalf of all undertook and agreed to convey the cotton safely along and over the entire route to its terminus in New York.

One of the plaintiffs testified to his having accepted the bill of lading after learning the charge of carriage, but did not read it nor give assent to its conditions, except by accepting it, and did not know what they were until after the cotton was burned.

One M. Duke, for the defendant, stated that he made no contract for transportation other than in the bill of lading, and that when the first one was taken out by the plaintiff McBee, witness asked him if he had read it, to which he replied: "No, he had not; it was no use, as he would never get his pay, as it did not

amount to anything any way," and that the plaintiff had filled up one of the blanks in his own handwriting, as he had before in the bills issued to others. It is needless to set out more of the evidence in the view we take of the appeal.

In whichever capacity the defendant entered into the contract of carriage, assuming an individual or partnership obligation, it is outside of the common law liability attaching to common carriers over their own lines, and has its force in the terms and conditions of a special contract, and the plaintiffs must abide by such of them as are reasonable in themselves and not repugnant to public policy.

The condition entering into the contract, and to which the plaintiffs acceded by receiving the bill of lading, and to which their attention is called by an entry on the face of the paper is, that in case of loss the plaintiffs will look alone to the carrier to whose negligence the loss is owing for compensation in damages. The plaintiffs accept this condition, which places them in the same relations towards the separate carriers, associated to form a through line, and relieve shippers of the necessity of having forwarding agents at each connecting point with increased expense, delay and annoyance incident thereto, as if no such connection had been made among the several companies. In the latter case the shippers would be compelled to seek redress from the carrier in default, and the same remedies are reserved to them against the several companies united in forming a continuous line. Such an arrangement secures manifest advantages to shippers, and it does not seem to us unreasonable that they should be required to hold each carrier only responsible for loss from its negligence and omissions and not one for another, and this is all that the clause recited undertakes to accomplish. It is not a case of notice, but of contract; and the cases wherein the controversy has been, whether it has been brought to the knowledge of a party sending off his goods or not, have no application, since transportation is undertaken on the face of the receipt, "subject to the conditions stated upon this receipt" and contained on the reversed side.

None of the stringent liabilities imposed by the common law are relaxed, and no company in the association is, by this provision, absolved from them, where, by remissness or negligence of its own, detriment has come to the goods in its custody and care. Its only effect is to protect each from the consequences of the acts and neglects of the others, when it has faithfully performed its own individual duty. The agreement with the shipper is to convey over its own road and deliver to the next in connection, and thus each one receiving stipulates to do, until the delivery to the last, and for these advantages he agrees to look only to the one in default for redress.

Such was the undertaking in the bill of lading issued to the plaintiff in *Lindley* v. *Railroad,* 88 N. C., 547.

Is, then, this provision consistent with public policy and valid? If it is not, and the same liability which the defendant incurs in conveying goods over its own road attaches to it still until the goods arrive at the point of destination and then only ceases, the plaintiffs can recover; if not, they fail in the action.

We do not propose to inquire to what extent the liability of common carriers by sea has been modified by the act of Congress, which exempts the owner of vessels from responsibility for loss " by reason or means of any fire happening to or on board the vessel, unless such fire is caused by the design or negligence of such owner," U. S. Rev. Stat., §4282; nor whether the burden of showing that the fire was not the result of design or neglect rests upon the owner who seeks exculpation under its provisions. This question will arise if an action be brought against the steamboat company, but its solution is not pertinent to the present inquiry.

We are clearly of opinion that such limitation is both lawful and reasonable, perhaps indispensable to the formation of long through routes of transportation, which so greatly promote the public convenience. In the absence of such extended lines the shipper would be forced to provide forwarding agencies at all connecting points, which, in the association, constituent com-

panies themselves undertake for him, without impairing any of his just rights to hold each successive carrier up to the full measure of its responsibility.

It is well settled that no conditions in a common carrier's bill of lading can be allowed to exempt it from liability for losses occasioned by the negligence or mismanagement of its own servants and employees; for protection against such injuries is a duty inseparable from their occupation as public agencies. This responsibility cannot be avoided, and a stipulation to this effect will not be enforced against such as may require their services, even when by reference inserted in the contract of transportation, the parties to it in this respect not standing upon equal footing.

Amidst varying adjudications upon the extent to which common carriers may limit their liabilities by special agreement, we are disposed to accept the guidance of those made in the supreme court of the United States, not only because of the great learning and ability of the judges who constitute it, but that there ought to be uniformity in the law and its administration in all the states, and inter-state and local commerce ought to be settled upon a permanent and well understood basis. We shall, therefore, seek instruction from that source to aid in arriving at a satisfactory conclusion as to the question now before us.

Mr. Justice FIELD remarks in reference to such special limitations: "Where such stipulation is made and it does not cover losses from negligence or misconduct, we can perceive no just reason for refusing its recognition and enforcement." *York Co.* v. *Railroad*, 3 Wall., 113.

So in *Railroad* v. *Manufacturing Co.*, 16 Wall., 328, Mr. Justice DAVIS says: "Whether a carrier, when charged upon his common law responsibility, can discharge himself from it by special contract is not an open question since the cases of *Navigation Co.* v. *Bank*, 6 How., 344, and *York Co.* v. *Railroad*, 3 Wall., 113. In both these cases the right of the carrier to restrict or diminish his general liability by special contract, which does not cover losses by negligence or misconduct, received the sanction of this court."

After a full and elaborate examination of the authorities, Mr. Justice BRADLEY announces the result in these words:

1. " A common carrier cannot lawfully stipulate for exemption from responsibility where such exemption ·is not just and reasonable in the eye of the law.

2. "It is not just and reasonable in the eye of the law for a common carrier· to stipulate for exemption from responsibility for the negligence of himself or his agents."

In reference to such a provision as that relied on as a defence to the present action, the court use this language in *Railroad* v. *Manufacturing Co., supra:*

"It is unfortunate for the interests of commerce that there is any diversity of opinion on such a subject, especially in this country; but the rule that holds the carrier only liable to the extent of his own route and for the safe storage and delivery to the next carrier, is in itself *so just and reasonable that we do not hesitate to give it our sanction."*

But we are relieved from the necessity of a prolonged discussion of the matter by a recent decision in a case so appropriate to our own, that we shall refer to it in some detail—*Myrick* v. *Railroad,* 107, U. S. Rep. 102:

The plaintiff delivered to the defendant a corporation formed in Michigan, the *termini* of whose road were at Chicago and Detroit, a lot of cattle to be conveyed to Philadelphia, in order to which they had to pass over other connecting roads.  The bill of lading which he took was in the following form:

MICHIGAN CENTRAL RAILROAD COMPANY.

CHICAGO STATION, Nov. 7, 1877.

Received from Paris Myrick in apparent good order, consigned order Paris Myrick; notify J. & W. Blaker, Philadelphia, Pa.

| ARICLES. | WEIGHT OR MEASURE. |
|---|---|
| Two hundred and two (202) cattle. | 250,000. |

Advance charges $11.00.    Marked and described as above (contents' and value otherwise unknown), for the transportation by the Michigan Central railroad company to the warehouse at ———.                   WM. GEAGAN, Agent.

On the margin was this:

"NOTICE.—See rules of transportation on the back hereof. Use separate receipts for each consignment."

On the back were the printed rules, of which the eleventh was in these terms:

"Goods or property consigned to any place off the company's road, or any point or place beyond the *termini,* will be sent forward by a carrier or freightman, where there are such, in the usual manner, the company acting, for the purpose of delivery to such carrier, as the agent of the consignor or consignee, and not as carrier."

"The company will not be liable or responsible for any loss, damage or injury to the property after the same shall have been sent from any warehouse or station of the company."

The default imputed was in the wrongful delivery of the cattle after their arrival in Philadelphia, and the circuit court was asked to charge the jury that, as the road of the receiving company terminates at Detroit, the defendant was not bound, in the absence of a special contract, to transport the cattle beyond such terminal point, and that the receipt of freight for a point beyond, and an agreement for a through freight did not of themselves establish such a contract.

This was refused, and the jury were directed that the receipt, termed a bill of lading, under the circumstances in which it was made, was a through contract, whereby the defendant agreed to transport the cattle named in it from Chicago to Philadelphia.

For this assigned error, the case was removed to the supreme court and the ruling reversed.

Delivering the opinion of the court, Mr. Justice FIELD declares the law to be this:

"A railroad company is a carrier of goods for the public, and

as such, is bound to carry safely whatever goods are entrusted to it for transportation within the course of its business to the end of its route, and then deposit them in a suitable place for their owners or consignees. If the road of the company connects with other roads, and goods are received for transportation beyond the termination of its own line, there is superadded to its duty as a common carrier, that of a forwarder by the connecting line, that is, to deliver safely the goods to such line, the next carrier on the route beyond. This forwarding duty arises from the obligation implied in taking the goods for a point beyond its line. The common law imposes no greater duty than this. If more is expected from the company receiving the shipment, there must be a special agreement for it."

The association formed by different carriers of connecting roads for the conveyance of freight along the constituted line, and the apportionment of a single freight charge among them, nothing more appearing, merely imposes upon each the duty to transport safely over its own road and deliver to its successor, and a separate accountability is thus assumed by any one through whose negligence injury may be sustained.

If, indeed, the co-operative association, for a common purpose, should proceed so far as to constitute partnership relations between them and others, based upon a separate liability in each of the constituent members for its own acts and omissions, and not of all the acts and omissions of any one, and this should enter as a stipulation in the contract of the shipper, we cannot see why it should not have all the obligatory force in limiting general responsibility as if the arrangement did not make a copartnership, under the rulings to which references have been made. As the undertaking is for safe carriage beyond the road of the receiving carrier, and outside the obligation imposed by common law, it must, in its nature, be susceptible of such modifications and restrictions as are just and reasonable, and not forbidden by public policy; and such, upon authority, is the condition underlying the contract with the plaintiffs. If any further consideration for the

exemption were necessary, and we think none was necessary outside of the contract itself, it will be found in the increased facilities and lessened expense received by the shipper in the transmission of his goods to a distant destination, requiring several lines to be traversed by means of such an arrangement among the carriers. *Philips* v. *Railroad*, 78 N. C., 294; *Lindley* v. *Railroad*, 88 N. C., 547.

But we do not see in the testimony reported evidence of the formation of a copartnership or of anything more than an association, whereby, for convenience, each undertakes not only to carry over its own road, but to act as a forwarding agency from its *terminus* to the next connecting road, such as existed in the case of *Myrick* v. *Railroad, supra.*

If, on the other hand, the defendant assumed the duty and agreed to convey and deliver the cotton in New York, it was by virtue of a special contract, into which entered the element of its non-liability for damage sustained while the goods were in the custody of other companies.

The court erred in permitting the jury to eliminate the provision from a contract of which it formed a part, upon the ground that it was not in force unless read by or known to the plaintiffs, or to one of them, though the receipt upon its face directed attention to the conditions, and it was their own fault if they failed to look at them. Certainly this inattention of the plaintiffs can not change the terms of the agreement to the prejudice of the defendant, and deprive it of a defence under it.

For the erroneous rulings against the defendant the verdict must be set aside and a new trial awarded, and it is so adjudged. Let this be certified.

Error.                                                 *Venire de novo.*