MEREDITH v. RAILROAD CO.

(Filed March 8, 1905).

*Carriers—Intermediate Points—Contract of Carrier—Damages and Delay—Presumption—Burden of Proof.*

1. Chapter 590 of the Laws of 1903 does not supersede or alter the duty of a carrier at common law, but merely enforces an admitted duty and superadds a penalty.

2. Chapter 590 of the Laws of 1903, providing that a carrier shall not allow any freight to remain at any "intermediate point" for more than forty-eight hours, does not authorize the carrier to hold it at each of such points the extreme limit, without any necessity for detaining it at all, and fourteen days consumed in carrying household goods from one point to another in the State, a distance of 277 miles with only one terminal point requiring change, is unreasonable.

3. Where a carrier accepts goods for transportation, in the absence of a special contract, it assumes the duty of safely carrying, within a reasonable time, the goods to the end of its line, and delivering them in like condition to the connecting carrier.

4. In an action against a carrier to recover damages for delay and injury to goods, upon proof that the goods were accepted for transportation in good condition by defendant and delivered by a connecting carrier to plaintiff at destination, after an unreasonable delay, in a damaged condition, the Court should have submitted the case to the jury, and in the absence of any evidence by defendant rebutting the *prima facie* case, should have instructed the jury that they would be justified in finding that the delay and injury occurred while the goods were in defendant's possession.

5. When it is proved that goods delivered for shipment are shown to have been injured while in the possession of the defendant carrier, the law raises a presumption that such injury was caused by the negligence of the defendant.

6. On proof that a carrier received goods in good condition, the burden of proof rests upon such carrier to show delivery in the same condition to the next carrier or to the consignee, such proof being peculiarly within its power.

ACTION by George W. Meredith against the Seaboard Air Line Railroad, heard by *Judge W. B. Council* and a jury, at the November Term, 1904, of the Superior Court of CRAVEN County.

The plaintiff, on February 16, 1904, delivered to the defendant railway company at Charlotte, N. C., a quantity of household goods and furniture, to be shipped to New Bern, N. C., and prepaid the freight thereon to the last-named point. On the 3d day of March, 1904, the goods, etc., were delivered to the plaintiff at New Bern, by the A. C. L. Railroad Company in a damaged condition. Plaintiff testified, and for the purpose of disposing of this appeal his testimony is to be taken as true, that the furniture was carefully packed. That he told defendant's agent at Charlotte that the goods consisted of his household furniture and clothing of his family, and he would like to have them shipped by first train. That he received the goods on the morning of March 3—they having arrived on the afternoon of March 2. That Charlotte is 187 miles from Wilmington, the terminus of defendant's road. That Wilmington is 90 miles from New Bern. That Wilmington is the starting point of the A. C. L. Railroad. The plaintiff offered testimony in regard to the damage sustained. He proposed to show the condition of the goods upon their arrival at New Bern as compared with the condition when delivered to the defendant at Charlotte. Objection by defendant. The Court asked plaintiff's counsel if he proposed to offer evidence tending to show that the goods were in a damaged condition when delivered by defendant to the A. C. L. Railroad Company. Counsel replied that he had no evidence on the point, but relied on the length of time shipments were on defendant's road to infer the injury which he wished to show occurred. The Court sustained the objection. Plaintiff excepted.

Testimony was introduced in regard to the damage sustained by plaintiff. The record presents several exceptions based upon the exclusion of evidence of special damages. At the conclusion of the evidence, the defendant moved for judgment of nonsuit. Motion allowed. Plaintiff excepted and appealed.

*W. D. McIver,* for the plaintiff.
*Simmons & Ward,* for the defendant.

CONNOR, J., after stating the facts. The plaintiff sues for injury to his goods, and for damages sustained by unreasonable delay in their delivery. The grounds upon which judgment of nonsuit was rendered do not appear upon the record. From the defendant's brief we gather that it was contended that the delay was not in excess of the time allowed by chapter 590 of the Laws of 1903, and Rule 10 of the Corporation Commission deducting the number of days allowed for "intermediate points," Sundays and holidays. The Act of 1903 provides, that the carrier shall not omit or neglect to transport goods received by it and billed, for a longer time than four days; nor allow any such goods to remain at any intermediate point for more than forty-eight hours, unless otherwise provided for by the Corporation Commission. For a violation of the act, the party aggrieved may sue for a penalty. It is to be noted that the basis of this action is the alleged breach of the duty imposed by the common law upon carriers to safely carry and, within a reasonable time, deliver goods tendered them for that purpose. For failure to perform this duty the person injured has a cause of action in which he may recover such damages as he sustained within the reasonable contemplation of the parties to the contract. To this common law duty the Legislature added a statutory duty, fixing, for that purpose, a definite time within which such duty should be performed, giving to the person injured an

action for a fixed penalty. "The act does not supersede, or alter the duty of the company at common law. The penalty in the case provided for is superadded. The act merely enforces an admitted duty." *Branch v. Railroad,* 77 N. C., 347. Neither the construction of the Act of 1903 nor the rule made by the Corporation Commission are before us for construction. What is meant by the words "intermediate points" is not very clear. It would work a singular result if they should be so construed that an act intended to enforce "an admitted duty" and expedite shipment of freight should give to a common carrier the right to consume fourteen days in carrying household goods which it was requested "to ship by first train"—a distance of 277 miles—with only one terminal point requiring change. We should be slow to hold that because the statute prohibits the carrier from holding the goods more than forty-eight hours at "any intermediate point," it could—without any suggestion that there was any necessity for detaining it at all—hold it for the extreme limit at each of such points, or that in these days of rapid transit, the carrier could be said to discharge its duty by consuming fourteen days, deducting two Sundays and a holiday, to carry goods from Charlotte to New Bern in this State. The plaintiff's right to maintain the action is clear. The plaintiff did not introduce any bill of lading, therefore the contract of carriage is dependent upon the construction given to his testimony. He says: "I had my furniture carefully packed and had it delivered to the defendant's depot at Charlotte, N. C., for shipment on the 16th day of February, 1904. I was along at the time of delivery. I received a bill of lading; I told the agent that the goods consisted of my household and kitchen furniture and clothing of my entire family, and that I would like for him to ship by first train. The Coast Line Railroad delivered the goods to me in New Bern. When I delivered my freight the agent, before he would receive the

shipment, demanded and required me to prepay the charges on them; which I did." The goods could have arrived from Charlotte to New Bern in three days if shipped. The defendant admits the receipt of goods at Charlotte, N. C., to be shipped to him at New Bern. It does not admit the quantity or value. The questions presented by the testimony are, What was the contract between plaintiff and defendant? What duty was assumed by defendant, and upon whom does the burden of proof rest to show the breach thereof? The motion for nonsuit admits that the goods were delivered to and received by the defendant company at Charlotte on February 16, 1904, for shipment to New Bern; that they were delivered to plaintiff by the A. C. L. Railroad at New Bern on March 3, 1904, in a damaged condition. That Wilmington is the terminus of defendant road and that the A. C. L. Railroad is the connecting line from Wilmington to New Bern. That the goods could have arrived from Charlotte to New Bern in three days if shipped. No bill of lading or other writing was introduced by either party. We are called upon to decide the questions presented by invoking the principles of the common law respecting the relative rights and duties of the parties. If we were permitted to be guided by the law as declared in *Muschamp v. Railway Co.,* 8 Mees. & W., 421, we should find no difficulty in holding that, upon the facts testified to by the plaintiff, the defendant contracted to carry the goods from Charlotte to New Bern and was liable for any unreasonable delay in doing so and any damage to the goods, whether such delay or damage occurred while in its possession, or in the possession of the A. C. L. Railroad Company. This is the settled English rule which has been adopted by many courts in this country. It must be conceded, however, that a majority of the American courts, including the Supreme Court of the United States, have not followed Muschamp's case. Hutchinson on Carriers, sec. 149;

6 Cyc., 479. The doctrine known as the American Rule is thus stated: "In the absence of any other contract than such as is generally to be implied from the acceptance of the goods for carriage, the obligation of the carrier extends only to the transportation to the end of its route and a delivery then to the next succeeding carrier to further or complete the transportation. In order to be bound further, there must be a positive agreement, either express or implied, extending the liability." Hutchinson on Carriers, sec. 149. Among the cases cited to sustain the text, are *Phillips v. Railroad,* 78 N. C., 294; *Knott v. Railroad,* 98 N. C., 73. The question has received the most careful consideration by many of the ablest courts in this country. The cases discussing and holding the several views will be found collected in Hutchinson on Carriers, note to sections 148, 149, also in 6 Cyc., 479, 480. *Phillips v. Railroad, supra,* has been frequently cited with approval by this Court, and while several of the cases may be distinguished from the one before us, we are not disposed to disturb the conclusion reached in that case. *Phifer v. Railroad,* 89 N. C., 311; *Weinberg v. Railroad,* 91 N. C., 33.

*Smith, C. J.,* lays down the proposition which he regards as established in respect to the liability of carriers for goods shipped beyond their lines. He concludes as follows: "Where no association exists and no special contract is made, and goods are delivered to a road for transportation over it, though to a place beyond its terminus, the carrier discharges its duty by safely conveying over its own road, and then delivering to the next connecting road in the direct and usual line of common carrier toward the point of ultimate destination." *Phillips v. Railroad Co., supra; Lindley v. Railroad,* 88 N. C., 547. Accepting this as the correct construction of the contract, the defendant road assumes the duty of safely carrying, within a reasonable time, the plaintiff's goods to the end

of its line and delivering them in like condition to the connecting carrier.     Plaintiff contends that having shown the delivery of the goods in good condition the delay in the shipment and the damaged condition in which they were delivered to him at New Bern, he established a *prima facie* case, and casts upon defendant the duty of showing that such delay and damage did not occur while the goods were in its possession.    It must be conceded that the question thus presented is not free from difficulty.    The defendant insists that the plaintiff having alleged a breach of duty, it is incumbent on him to establish it, and that the goods having been received by it in good condition, there is a presumption that such condition continued and that it discharged its duty, which prevails until rebutted by testimony on the part of the plaintiff. The plaintiff invoked the well established principle that a party is not bound to prove a negative, nor a fact peculiarly within the knowledge of the opposite party.    The rule is thus stated in 1 Elliott on Evidence, 141: "As a rule it is only where the fact negatived is peculiarly within the knowledge of the adversary, that the burden is, in any sense shifted to the latter, and even then it is the burden of going forward rather than the burden of ultimately establishing the case. The fact that the party having peculiar knowledge of the matter, fails to bring it forward, may raise a presumption or justify an inference in favor of his adversary's claim, and thus to shift the burden of proceeding in order to win, but the burden of establishing the issue is not shifted, nor is it ordinarily determined in the first instance by the mere fact that a negative is involved or that some fact is peculiarly within the knowledge of the adverse party."

The principle is stated by *Mr. Justice Brown* in *U. S. v. Denver R. Co.,* 191 U. S., 84, thus: "When a negative is averred in the pleading or the plaintiff's case depends on the establishment of a negative, and the means of proving the

fact are equally within the control of each party, then the burden of proof is upon the party averring the negative; but when the opposite party must, from the nature of the case, himself be in possession of full and plenary proof to disprove the negative averment, and the other party is not in possession of such proof, then it is manifestly just and reasonable that the party who is in possession of the proof should be required to adduce it; but upon his failure to do so we must presume it did not exist, which of itself establishes a negative." He further says: "This burden, however, which was simply to meet the *prima facie* case of the government, must not be confounded with the preponderance of evidence, the establishment of which usually rests upon the plaintiff." The exact question was considered by the Supreme Court of Vermont in *Brintnall v. Railroad,* 32 Vt., 665, *Poland, J.,* saying: "The argument is, that showing the box did not arrive at Boston, the end of the route, but was lost, does not prove or tend to prove the defendants did not deliver it to the next carrier, because it might have been lost between Castleton and Boston. It must be admitted that it is very inconclusive proof of the fact, but still we think it has some tendency to establish it. The box is proved to be in the hands of the defendants; there is no evidence that anybody else ever had it, or that it was ever in the possession of any other carrier in the line. The usual and ordinary course of things, what is always expected and what generally proves true, is that goods forwarded upon such a line arrive at their destination, and therefore the fact that goods do not arrive at one end of the line is some evidence they were not sent from the other. * * * But we place it upon the ground mainly that this was really all the proof the nature of the case permitted to the plaintiff, and that proof of a delivery by the defendants to the next road was a matter that was peculiarly within the power of the defendants, and not at all in the

power of the plaintiff, unless the defendants and the connecting roads preserved evidence of the transfers of all freight from one road to another." "And on proof that any carrier on the route received the goods in good condition, the burden of proof rests upon such carrier to show delivery in the same condition to the next carrier or to the consignee, it being peculiarly and almost solely within its power to make such proof." 3 Wood on Railroads, 1926; *Railroad Co. v. Tupelo Co.,* 67 Miss., 35; *Railroad v. Emrich,* 24 Ill. App., 245.

In Brintnall's case, the goods having been lost, the question arose upon which of the several connecting roads the loss occurred. We can see no reason why the same rule adopted in that case should not apply where the delivery is delayed or the goods damaged. The reason of the law is the same in both cases—the knowledge or information in respect to the time and place of loss, injury or delay, being peculiarly within the knowledge of the defendant. 1 Greenleaf Ev., sec. 79. This Court has applied the principle in prosecutions for sale of liquor without license. *State v. Morrison,* 14 N. C., 299; *State v. Emery,* 98 N. C., 668; to indictments for entering upon land without a license, *State v. Glenn,* 118 N. C., 1194. The principle is also illustrated in *Ellis v. Railroad,* 24 N. C., 138. This was an action for damages sustained by burning the plaintiff's fence. It was shown that the fence was burned by the defendant's engine. It introduced no evidence to show what care was used to prevent the injury, and *Gaston, J.,* for the Court, held that the *prima facie* case of negligence entitled the plaintiff to recover, unless rebutted by evidence of the exercise of care. *Aycock v. Railroad,* 89 N. C., 321. In *Lindley v. Railroad, supra, Smith, C. J.,* said: "The obligation resting on each attaches as the goods pass into its custody, and ceases only when safely carried and delivered to its successor." This case comes clearly within the rule which throws upon the defendant the burden

of showing, or at least introducing evidence tending to show, that it has discharged its duty. The goods are placed in the defendant's care and control, put into its car, carried over its road, and delivered to its agent at Wilmington. The plaintiff could not accompany them on the route, nor is it possible for him to show, save by the agents and the books of the defendant, the time of delivery or their condition when delivered to the Atlantic Coast Line. It is said that he should seek for his evidence from the latter road. The same difficulty confronts him. He would find it a difficult undertaking to show the fact. He would not know which of its agents to summon, or what paper, books or records they should bring. On the contrary, it is not unreasonable to assume that when the goods were delivered to the Coast Line the defendant took a receipt for them, showing date and condition of the goods, and that this is in its possession. We can see no reason why it should not be required to repel the *prima facie* case, as was the trespasser or retailer who relies upon a license. In *Burwell v. Railroad,* 94 N. C., 451, *Merrimon, J.,* says: "The receipt and manifest were evidence going to prove a *prima facie* liability against it (the defendant), but were not conclusive." In *Mitchell v. Railroad,* 124 N. C., 236, the principle is applied in an able and exhaustive opinion by *Mr. Justice Douglas.* It is true that he was discussing the question in respect to the burden of proof as applied to the last carrier, but we can see no reason why the same rule does not apply when the first or contracting carrier is sued. In both cases the plaintiff's cause of action is based upon the assumption of a duty and the breach thereof. The same reason which requires the last carrier to show performance of the duty applies with equal force to the first—that the sources or means of proving the exculpating facts are peculiarly within its knowledge, and not otherwise open to the plaintiff. It would be a difficult if not a vain undertaking

on the part of the plaintiff to locate the time and place at which his goods were injured, or their delay of fourteen days occurred. Every reason which justifies the rule as to the first carrier applies with equal force to the other. It assumed the duty of safely, and within a reasonable time, conveying the goods to Wilmington and delivering them to the Coast Line. For some reason, and by some one's default unknown to the plaintiff, the goods were delayed many days, while he with his family of wife and children were at New Bern without furniture or clothing. The time, place and cause of delay are known to the defendant, or at least, if not occurring while in its control, the proof thereof is in its possession; it cannot be that it may admit the facts testified to by the plaintiff and withhold the facts in its own possession. To permit this, the law would "keep the promise to the ear and break it to the heart." If we felt ourselves impelled to sustain the defendant's contention in this respect, we should not hesitate to return to the doctrine of the English courts and simplify the matter by holding, as we think there would be good reason for doing, that the contract, in the absence of any stipulation to the contrary, was one of carriage for the entire route. When this Court adopted the view maintained by the defendant in Phillips' case, *supra,* which permitted the first carrier to deliver the goods to the connecting carrier and relieve itself of further liability, we feel quite sure that it did not contemplate that the first or contracting road, as in this case receiving the entire cost of transportation, could compel the shipper to cast about in the dark seeking for some one to sue, when his goods were unreasonably delayed and delivered in a damaged condition. Chapter 46, Laws 1897, has no application to this case. In the absence of any bill of lading limiting liability, the defendant was an insurer of the goods, and hence liable for the damage if it occurred on its line. We fail to see that the act works any change in

the law. It is uniformly held by the courts that when it is shown that goods delivered for shipment are shown to have been injured while in the possession of the defendant carrier, the law raises a presumption that such injury was caused by the negligence of the defendant. The question here is as to the mode of proof that the goods were delayed or injured while in the defendant's possession. His Honor should have permitted the plaintiff to show, if he could, the damage, etc., and in the absence of any testimony by defendant, he should have instructed the jury that they would be justified in finding that such delay and injury occurred while the goods were in the defendant's possession.

We forbear to discuss the exceptions to the exclusion of other testimony. We simply hold that there was error in excluding the proposed testimony in regard to the condition of the goods when delivered to the defendant at Charlotte and when delivered to the plaintiff at New Bern and in directing judgment of nonsuit.

Error.