FIELDING R KNOTT v. RALEIGH AND GASTON RAILROAD COMPANY.

*Common Carrier—Contract—Evidence—Negligence—Agency.*

1. A railroad company, whose line is one of several connecting roads between places from and to which freight is shipped, in the absence of a special contract, or of an allegation in the pleadings and proof of an association or copartnership by which each of the connecting lines will become liable for the contracts of the others, is not responsible for damages for negligence occurring beyond its terminus. In such cases its liability is confined to that of a forwarding agent.

2. To show that the freight was in good condition when it was delivered by the defendant to a connecting line, evidence that it is the custom of agents of such lines to examine freights before receiving them, and if found in good condition to forward them, and that such examination was made and forwarding was done, is admissible.

3. The record of the state of the weather made by one who is appointed for that purpose by the Signal Service Bureau of the United States, is, at least, a *quasi* public record, and is of itself evidence of the conditions of the weather at any period embraced by it.

(*Burwell* v. *Railroad,* 94 N. C., 451; *Phifer* v. *Railroad,* 89 N. C., 311; cited and approved; and *Phillips* v. *Railroad,* 71 N. C., 298, cited and distinguished).

CIVIL ACTION, tried before *Philips, Judge,* at Spring Term, 1887, of GRANVILLE Superior Court.

The tobacco—for damages for injury to which this action was brought—was delivered by the plaintiff, to the Oxford & Henderson Railroad on the 19th of February, 1884, for which a receipt was given as follows:

"Received of F. R. Knott, subject to conditions named on back of this receipt (the tobacco, designating it) in apparent good order, to be sent to Allen & Shaffer, Richmond, Virginia."

The conditions named on the back of the receipt contained a number of limitations upon the liability of the company, of which the only one material to this case, is as follows:

"The O. & H. R. R. Co. is hereby authorized to deliver goods to any other company or person for transportation, such company or person so selected to be regarded exclusively as the agent of the owner, and as such, alone liable; and the O. & H. R. R. Co. shall not in any event be responsible for the negligence or nonperformance of any such person or company."

It was in evidence that the Oxford & Henderson Road, the Raleigh & Gaston Road, the Petersburg & Weldon Road, and the Richmond & Petersburg Road, were connecting roads and in the line between Oxford and Richmond; that the Oxford & Henderson road is separate and distinct from the others, and not under the same management; that the plaintiff's tobacco was received from the Oxford & Henderson road on February 19th, about 10 o'clock A. M., and forwarded by the defendant company to Weldon, a distance of about 55 miles, about 11 o'clock on the same day.

W. J. Robards, agent for the defendant company at Henderson, among other things testified: "Freights from Oxford to Richmond, would go over the Oxford & Henderson, the Raleigh & Gaston, the Petersburg and Weldon, and the Richmond & Petersburg roads; that they were connecting lines, but not under the same management; that he saw no bill of lading for the tobacco, nor was any notice given him that one had been given; that he gave manifests for the tobacco, marking on it "F. R. Knott, consignor, Allen & Shaffer, Richmond, Va., consignee," and under Knott's name was written, O. & H. R. R., to show from whom it was received. The Oxford & Henderson road manifests to us, and we from Henderson. The Raleigh & Gaston and the Petersburg & Weldon roads divide freights; our custom is to run freights to Richmond, and collect when they get to Weldon."

It was in evidence that, on February 19th, at 6 o'clock P. M., the cars containing the plaintiff's tobacco were turned

over to the Petersburg & Weldon road. J. B. Tilgman, assistant agent for the defendant company at Weldon, among other things, testified:

"No exception was made to the delivery of the freight * * * * The agent of the Petersburg & Weldon road made an examination of the cars, and no exceptions were made. The cars, when they arrived at Weldon were sealed and in good condition * * * * To the best of my knowledge they (the goods) were in good order and condition when received in Weldon."

The defendant's counsel asked the question:

"What do you found that knowledge upon?"

The witness answered:

"Upon the custom that exists between the roads at Weldon, that if the agent of the Petersburg & Weldon company, after examination, found that anything was wrong, he would not have received them, and when he checked them, meaning they were all right."

The answer was objected to by the plaintiff; objection overruled; exception.

T. A. Clark, witness for defendant, testified: "That in February, 1884, he kept a meterological record at Weldon, by appointment from the chief signal officer of the United States, at Washington, and that he has kept such a record since February, 1872; that it is a public record, and his appointment is in writing, but he did not bring it with him; that he is known as a volunteer weather observer, and makes monthly official reports to Washington, D. C.; * * * * that he has taken no oath, given no bond, and his appointment is not under seal; that the record now produced is in his own handwriting, having made it contemporaneous with the matter of which it purports to speak."

The defendant then offered to show by this witness and record "that in Weldon, February 19th, 1884, at 2 o'clock p. m., it was fair, at 7 o'clock p. m., it was clear, and that no

rain fell before 9:45 p. m.    The rain began then and stopped next morning at 2:30; between these hours there was a storm."

The plaintiff objected; objection overruled, and plaintiff excepted.

The witness testified as above, and upon cross-examination said: "He had no personal recollection of the storm; he did not always know when it starts to rain."

There was evidence tending to show that the tobacco was in good order when shipped from Oxford on the 19th of February, and that it was shipped in good, well protected cars.   There was also evidence tending to show that one package of it was received in Richmond on the 20th of February, in a wet, sobby and damaged condition.

The plaintiff tendered the following issues, which were submitted to the jury:

1. Was the tobacco in good condition when delivered to the defendant?

2. Was it damaged when in possession of the defendant?

3. Was it damaged by the defendant's negligence, or that of its agents or servants?

4. If so, what was the amount of damage?

The counsel for the defendant asked the Court to charge the jury, that there was no evidence of any damage to the tobacco while it was in the defendant's possession.

In reply to which his Honor said: "I will not read over my notes to see if there is any evidence or not, that the tobacco was damaged while in the defendant's possession; but will leave it to the jury to pass on the issues from all the evidence; the counsel for the plaintiff and the defendant agree that I need not read over my notes to refresh the memories of the jury, as to what the witnesses testified to while on the stand."

"The Court charged the jury that if they believed that the tobacco was not damaged while it was in the custody of

the defendant, but that the same was delivered in good condition to the Petersburg & Weldon road, the plaintiff is not entitled to recover."

The plaintiff excepted to the charge.

There was verdict and judgment for the defendant, and appeal by plaintiff.

*Messrs. A. W. Allen* and *R. W. Winston*, for the plaintiff.
*Mr. E. C. Smith*, for the defendant.

DAVIS, J., (after stating the case). The plaintiff insists that the Raleigh & Gaston road was the first of the continuing connecting lines of roads to Richmond, and that it was liable for damages sustained on any one line of the continuous roads; that if the damage did not occur on the Oxford & Henderson road, then the defendant was responsible for the safe delivery in Richmond, and for this he cites *Phillips* v. *R. R. Co.*, 78 N. C., 298. The cases are unlike. In that case, the North Carolina Railroad Company received from the plaintiff a bale of goods, to be shipped from Raleigh, North Carolina, to Monroe, Louisiana.

The bale was delivered at the terminus of the North Carolina road at Charlotte, to the Charlotte & Columbia road, was lost between Charlotte and Monroe, and the plaintiff sought to hold the North Carolina road responsible, alleging a special contract.

The issues submitted were:

1st. Did the defendant make a *special* contract with plaintiff to transport the goods to Monroe?

2d. Was the bale lost on the route?

It was held that the receipt given by the defendant, and the assurance given by its agent to the shipper, that the goods would reach Monroe in a few days, in good condition, and that he (the shipper) could pay the freight at Monroe when the bale reached that place, was no evidence of a spe-

cial contract on the part of the North Carolina Railroad Company that the goods should be safely delivered at Monroe, and its liability was discharged when it delivered the goods to the next connecting road, and the jury having found upon such evidence that there was a contract, it was declared to be erroneous, and a new trial was awarded. In the case before us, there was no evidence of any contract, except that contained in the receipt given by the Oxford & Henderson road, and that could in no way bind the Raleigh & Gaston road; and the manifest given by the agent of the defendant at Henderson does not bind the company to do more than deliver the goods, as a forwarding agent, to the next succeeding line, in the absence of any contract, express or implied.

There was *evidence* tending to show that the Raleigh & Gaston, and the Petersburg & Weldon roads, belonged to a line of associated railroads, and that these roads divided the freight charges, but there was no evidence of such a division with the Richmond and Petersburg road. Undoubtedly a connecting line of carriers may form an association or copartnership by which each may become liable for the others, but assuming that there was in fact such an association, there was no allegation of it in the complaint, or that by any contract or agreement the Raleigh & Gaston road was to be liable for any carrier beyond its own terminus, and in the absence of any allegation or proof of such an agreement, its liability ceased when, as a forwarding agent (and in the absence of proof, it could be held to be no more, as the Oxford & Henderson road was), it delivered the tobacco in good condition to the succeeding line. It is true that in the third allegation of the complaint, it is charged that the defendant agreed to carry the tobacco safely to Richmond, but this was denied, and though it made an issue, it was not presented nor tendered as such by the plaintiff, and cannot therefore be considered.

In response to the material issues tendered by the plaintiff, the jury find that the tobacco was not damaged when in the possession of the defendant, or by its negligence or that of its agents or servants.

In *Phifer* v. *Railroad*, 89 N. C., 311, it was alleged that the defendant company, (the Carolina Central) "for a valuable consideration contracted to carry cotton from Lincolnton to New York over its own and the line of other companies, using the latter as agencies of its own for this purpose," and in a second cause of action, "that the defendant as one of a partnership association of common carriers formed by itself (and other companies, naming them) on behalf of all, undertook and agreed to convey cotton safely along and over the entire route to the terminus in New York. There was not *only allegation* of *association* but of *partnership*, and the evidence was certainly as strong as in the present case (in which there are no such allegations) and it was held, that the facts of that case, to which we need only refer, constituted a mere association between the different lines, each undertaking to transport over its own line, and not as agent in forwarding to the next succeeding line, and that it was not a copartnership in which one was liable for all. The subject is there discussed at length by the Chief Justice, and we refer to it and the authorities cited, (among them *Phillips* v. *Railroad, supra,*) as conclusive against the plaintiff upon the question of the liability of the defendant for loss beyond its terminus.

The objection to the answer given by the witness Tilgman cannot be sustained. The Raleigh & Gaston road delivered to the Petersburg & Weldon road at Weldon; the agent of the receiving road makes examination of the goods or packages, and if not in good condition or apparent good condition, they will not be received, but if in good condition, they are checked as "all right." This was the custom, and was a very good foundation for his knowledge.

Neither can the objection to the evidence of the witness Clark, and the record introduced by him, be sustained. Undoubtedly he might refresh his memory by a written memorandum made at the time, but the record of the state of the weather was something more; it was a record (official or *quasi* official in its character, and of a public nature) made in the course of his public duty, of what occurred under his personal observation, and when properly authenticated, was in itself evidence. 1 Greenleaf, §483. It was competent to show the state of the weather. *Burwell* v. *Railroad*, 94 N. C., 451. It does not appear from the record, though insisted upon here for the plaintiff, that there was any objection to the refusal of his Honor to charge the jury, that there was *no evidence* of any damage to the tobacco while in defendant's custody, and we cannot see how the refusal to so charge could prejudice the plaintiff. It was agreed that the notes of his Honor need not be read, and we cannot discover any expression of "opinion" as is insisted by the plaintiff, in what was said by his Honor in refusing to give the instruction asked for by the defendant. There is no error.

No error.                                                    Affirmed.