On an application to an authorized agent of the defendant company by C. W. Hoover, in behalf and by authority of the members of a colored fire association, known as the Bucket and Ladder Company of the city of Raleigh, to engage an excursion train to run from said city to the town of Warrenton and return, the following answer was received bearing date 25 May, 1887:
"C. W. Hoover, Esq., Box 329, Raleigh, N.C.:
"DEAR SIR: In response to your favor of various dates, 1887, we will charter you three passenger coaches and one baggage car to run by special *Page 210 
train, to run between Raleigh and Warrenton, leaving Raleigh on 13 June, 1887, returning leave Warrenton on 13 June, 1887, for $200 (two hundred dollars), to be paid, $30 on or before 25 May, 1887, and $170 13 June, 1887, before departure of train from Raleigh. The conditions on which this charter is made are as follows: No greater (240) number than sixty people are to go in any one car, nor will you be permitted to sell tickets at any point except Raleigh, said sales to be good only on your excursion; nor will you be permitted to sell any ticket on your return trip. Excursionists must return by same train or car in which they are carried, otherwise full fare will be charged. If special train is run the railroad company does not agree to adhere to any special schedule unless notice is given when this contract is signed in time to enable proper schedule to be prepared; nor will this company be held responsible for the baggage of your passengers. Upon return of this letter with your signature accepting conditions as above, accompanied by $30 forfeit (as a guarantee that you will carry out your part of this agreement), arrangements will be completed as noted.
 "F. W. CLARK, "General Passenger Agent."
"I accept the above conditions and enclose $30.
"C. W. HOOVER."
"If convenient to furnish additional coaches, charge will be $26 each, to be paid before departure of train from Raleigh. F. W. C. "B."
 "Received the $30 forfeit as herein mentioned. F. W. C. "B."
 "25 May, 1887. J. B. MARTIN, "Auditor."
The defendant railroad does not run to Warrenton, but connects at one of its stations nearest to the town with an independent line, (241) known as the Warrenton Railroad, which runs thereto over a track of three miles in length.
During the pendency of the negotiations for the excursion, and previous to the day of its departure, a correspondence took place between the agents of these companies which, and the result arrived at as seen therein, were as follows: *Page 211 
"RALEIGH, N.C. 11 May, 1887.
O. P. Shell, Warren Plains:
We wish to contract for an excursion, Raleigh to Warrenton. Will the management of your road accept $5 for engine and $5 per coach for train passing over Warrenton Railroad from Warren Plains to Warrenton and return? F. W. CLARK."
"WARREN PLAINS, N.C. 19 May, 1887.To F. W. Clark:
President of Warrenton Road accepts your terms of $5 per car, but directs me to say that our engine can haul only three passenger coaches at once, hence would like for you to send your engine through to Warrenton. O. P. SHELL."
"RALEIGH, N.C. 7 June, 1887.
W. J. White, Warrenton Railroad, Warrenton, N.C.
DEAR SIR: — Referring to my telegraphic correspondence of 19 and 24 May with Mr. Shell, of your road, I presume Mr. Shell conferred with you in regard to the excursion discussed. We have arranged with the colored fire company of Raleigh to run an excursion train, consisting of three passenger coaches and one baggage car, Raleigh to Warrenton and return, on 13 June next. These parties also have an option on four coaches in addition to the above mentioned, and the train may consist of from four to eight coaches. It has been arranged by (242) the superintendent of the R. and G. road to handle this train only between Raleigh and Warren Plains, since it is deemed unsafe for our engine to go over your road. In making this charter we have been governed by the telegram from Mr. Shell under date of 19 May, and will report collections to you at the rate of $5 per car for such number of coaches as may constitute the excursion train. This amount to cover the transportation of not more than sixty persons to the car, two persons under twelve to be considered as one. Captain Smith will confer with you in regard to the matter of schedule, and I ask you that you advise me that the necessary arrangements will be made for the handling of this train between Warren Plains and Warrenton.
Yours truly, F. W. CLARK, G. P. A."
"WARRENTON, N.C. 8 June, 1887.
F. W. Clark, G. P. A., Raleigh, N.C.
DEAR SIR: — Your favor of the 7th is received today. Mr. Shell conferred with me relative to the intended excursion, and I now confirm his *Page 212 
telegrams to you. We can haul three coaches at a time, but as our road is only three miles long, we can soon put them here and back to Warren Plains. Yours truly, WM. J. WHITE, President W. R. R."
"R. AND G. R. R. SPECIAL TIME TABLE
To be run between Raleigh and Warren Plains, 13 June, 1887, to take effect Monday, 13 June, 1887, 7:45 a. m."
The plaintiff, under these conditions, became a passenger on the excursion train, and while in a coach on the track of the Warrenton Railway suffered the injury, for the redress of which he brings this action against the defendant, caused, as he alleges and as the jury find, (243) by mismanagement and negligence of the officers and servants of that company, without that concurring negligence on the part of the plaintiff which would exonerate it from liability therefor. The controversy is as to the responsibility of the defendant company, under these arrangements, for the misconduct (and consequent damage) of the officers and agents of the short connecting line, and the instructions asked for the defendant all proceed upon the idea of a sole responsibility resting upon the latter. The instructions asked and refused, in substance and condensed in form, are these:
1. If the companies are separate and independent corporations, the disaster having occurred on the Warrenton Railroad, managed by its officers, the first issue, "Was the plaintiff injured by the default and negligence of the defendant?" should be answered by the jury, "No."
3. That there is no evidence of negligence on the part of the defendant's employees, or of any injury resulting therefrom.
4. If the contract was that the defendant should run the train to Warrenton, it did not impose on it a liability for the negligence of the connecting company.
5. There is a fatal variance between the allegations in the complaint and the facts in proof.
8. One company can only become responsible for the defaults of another by express agreement, and the issuing of a ticket securing a passage over another line is not evidence of such agreement, and none has been offered.
9. If the injury was suffered on the Warrenton Railroad, the jury must say to the first issue "No."
. . . . . . .
14. It is the duty of the railroad company to exercise the highest degree of care in providing for the safety of passengers over its own *Page 213 
track, yet this duty terminates when they are delivered to an independent connecting line, and there is no evidence that defendant's employees had any right to look after or run the train on the (244) Warrenton road.
17. There is no evidence of defendant's culpability, and if held to be culpable in law, the damages recoverable are only for a breach of the contract to convey the plaintiff to Warrenton, and no damages have been shown.
20. If the plaintiff bought his ticket from Hoover or from the fire company, the plaintiff must look to him for compensation, and not to defendant.
It was in evidence that the passengers were all safely conveyed to Warren Plains station, and there it became necessary to divide the train and carry the coaches in separate sections to Warrenton; that while the first section was at Warrenton, stationary, the second section came at a speed of twenty-five or thirty miles an hour, and there being no airbrakes on it nor brakemen sufficient to arrest its rapid motion, it came in violent collision with the first, both being smashed, and the plaintiff was injured.
The testimony was conflicting as to the condition of the plaintiff from drinking, and whether he was in any default or wanting in self-care by which the injury could have been averted.
The instructions asked for the defendant and given are substantially as follows:
1. The defendant's giving authority to Hoover to sell the plaintiff a ticket for carriage to Warrenton and back does not constitute a contract with the plaintiff that defendant would be responsible for the negligence of the other company.
6. If defendant's agent told Hoover his company could not carry the excursion farther than to Warren Plains, and at Hoover's request the agent made a contract with the Warrenton company for the additional transportation, the issue of negligence must be found in favor of the defendant.
7. If the understanding with Hoover was that defendant should (245) manage the train on its road, and the other company manage it after passing upon its track, and thus complete the carriage to the terminus agreed on, the defendant is not liable.
15. While Shell may be an agent of the defendant at that station, to receive freight and issue tickets, he might also exercise an agency for the other company, and his acts in the latter capacity would not be binding on the defendant, and there is no evidence that, in what he did in *Page 214 
respect to the excursion train in entering upon and passing over the Warrenton track, he was acting for the defendant.
21. If any one warned the plaintiff of his danger and advised him to go into the other coach where, if he had been, he would have avoided injury, then he did contribute to his own injury.
The court further charged that if the jury shall believe from the evidence that C. W. Hoover, acting for the said fire company, contracted with the defendant for the excursion train to run from Raleigh to the town of Warrenton and return, and that the defendant made a special contract with the Warrenton Road to take the excursion train from Warren Plains to Warrenton and return, and that the said Warrenton Road acted as the agent of the defendant in carrying said excursion train from Warren Plains to the town of Warrenton and return, and the plaintiff was injured by reason of the negligence of the said Warrenton Road, then the plaintiff is entitled to recover, provided plaintiff did not contribute to his own injury. The defendant excepted because there was no evidence of any partnership or agency to bind the defendant.
There was a verdict for plaintiff, and from the judgment rendered thereon, the defendant appealed.
The exceptions are intended to comprehend all the instructions which, when requested, the court declined to give, and such as were given outside of them without a specification of the errors they are supposed to contain.
In our opinion the charge was quite as favorable to the defendant as its counsel could reasonably require, and in some particulars more so. But as the plaintiff, having secured a verdict, does not complain, we shall not review them.
The principal contention, and to this central inquiry the various matters in controversy all tend, is as to the scope and effect of the contract for the excursion beyond the defendant's own line, and its liability for the consequences of negligence upon another connecting line.
While it is true that an arrangement entered into among roads, which by their union form a route between distant termini to facilitate transportation, each acting as forwarding agent for the others at their points of connection, does not of itself, and especially when the common liability is disclaimed in the freight bill or passenger ticket, render each liable for the default of the other, as is held in Phifer v. R. R.,89 N.C. 314; Weinberg v. R. R., 91 N.C. 31; Knott v. R. R., 98 N.C. 73, it is *Page 215 
not less well settled that where there is a special contract to transport to a point beyond the contracting company's line, the companies whose services are required in the execution of the contract become an agency, severally, of the first in fulfilling its terms and giving it effect.
In a note to the case of Queenby v. Vanderbilt, quoted from17 N.Y., 306, in Thompson, Carriers of Passengers, at page 423, in which it is decided that one of several connecting lines may bind itself for a safe transportation over the other lines, and whether such is (247) the contract must be determined upon the evidence, the author adverting to repugnant rulings in different courts, says: "The weight of authority is that if a carrier undertakes to carry a passenger and his baggage to a certain destination, he is responsible for his safety and that of his baggage as carrier throughout the whole distance, whether the franchise and means of conveyance, where the injury or loss occurs, be owned or controlled by him or some other carrier," and a very large number of cases are referred to as so ruling. This liability is the legal result of a special contract to convey between two designated points, and to provide adequate means of conveyance over the route between them, and such, in our opinion, is very clearly the contract in the present case, and so it seems to have been understood between the parties.
A single charge is made for the whole trip, and the train is to pass over both roads in reaching the agreed terminus — the defined conditions attached to the entire route — a separate arrangement is made between the two companies for the carriage by the Warrenton company over its short line, and a price stipulated to be paid by the other for this necessary service. Besides these evidences of the common understanding of the contract, its terms are direct and specific themselves, and as the defendant agreed to run the train to Warrenton, necessarily it must make some arrangement with the other line in order to fulfill it.
The defendant's liability, therefore, commensurate with their agreement, covers the entire transportation, and the Warrenton company and its agents become pro hac vice the defendant's agents in consummating it.
It was, therefore, entirely proper to charge in the complaint the disaster as proceeding from the defendant's negligence, the negligence of the employees being in law the negligence of the employer.
So, too, the common law imposes upon a common carrier (248) conveying passengers under a special contract, which admits to the coaches such as may pay, an obligation to carry safely and to use proper care and vigilance in the management of the train.
We find no error, and must affirm the judgment.
Affirmed.
Cited: White v. R. R., 115 N.C. 635; Carleton v. R. R., 143 N.C. 50. *Page 216