LONDON AND LANCASHIRE FIRE INSURANCE COMPANY, Respondent, *v.* THE ROME, WATERTOWN AND OGDENSBURG RAILROAD COMPANY, Appellant.

The liability of a common carrier, as such, begins when goods are delivered to him, at the place appointed or provided for their reception, in a fit and proper condition and ready for immediate transportation.

This rule applies to a railroad company to whom property has been delivered and received at one of its stations for immediate transportation although it may not be able promptly to transport it, and there may be long storage of the property until cars can be furnished, and this; although by agreement of the parties it is the duty of the shipper to load it on the cars when furnished.

Where, therefore, in an action brought to recover damages for the destruction by fire of a quantity of hay, alleged to have been delivered to defendant as a common carrier for transportation, it appeared that the hay was delivered in bales for immediate shipment, and placed in one of defendant's freight houses with the consent and under the direction of its freight agent, and was in the freight house at the time of the fire, and that it was the usage and regulation of defendant, known and assented to by the shippers, that they were to load such freight into defendant's cars, *held*, that defendant's liability as a common carrier attached on delivery of the hay and in the absence of evidence that a delay in the shipment was caused by some fault of the shippers in not shipping the hay on cars furnished, it was liable.

*It seems* that, as a general rule, it is the duty of a railroad company to load freight delivered to it for transportation into its cars, and that it may not devolve this duty, by any regulation, upon the shipper, and it cannot legally, as a condition of transportation, generally exact from the shipper a contract to place the freight upon its cars.

As to whether this rule applies to bulky freight, and whether as to it the company may make a regulation requiring the shipper to load it, *quære.*

Reported below, 68 Hun, 598.

(Argued December 6, 1894; decided December 18, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made April 26, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*D. G. Griffin* for appellant. On the undisputed evidence it was not the duty of the defendant at the time of the destruction of the property to send it forward without further act or intervention on behalf of the owners. (*Zimmer* v. *N. Y. C. & H. R. R. R. Co.*, 137 N. Y. 460; *Judson* v. *W. R. R. Co.*, 4 Allen, 520; *Wilson* v. *R. R. Co.*, 82 Ga. 386; Angell on Carriers, § 129; *Grosvenor* v. *N. Y. C. & H. R. R. R. Co.*, 39 N. Y. 34; *O'Neill* v. *N. Y. C. & H. R. R. R. Co.*, 60 id. 138; *Baron* v. *Eldridge*, 100 Mass. 455; *Watts* v. *B. & L. R. R. Co.*, 106 id. 467; *Nichols* v. *Smith*, 115 id. 332; *S. L. & I. M. R. R. Co.* v. *Knight*, 122 U. S. 79; *M. P. R. Co.* v. *McFadden*, 154 U. S. 155.) On the undisputed evidence the property was delivered on the defendant's premises, under an executory contract for its transportation, and a recovery for a breach thereof can be had only in an action where the complaint alleges and the proofs show a performance, or a tender of full performance by the shippers of any further act required of them to complete the contract, or that they were prevented from so performing by the fault or omission of the defendant. (*Dunham* v. *Dimon*, 8 N. Y. 508; *Pope* v. *T. H. C. M. Co.*, 107 id. 61.)

*A. H. Sawyer* for respondent.    An insurer, who has been compelled to pay a loss by fire caused under such circumstances as to render the railroad company liable to the insured, may take an assignment of the whole claim for damages from the insured, exceeding the amount paid by the insurer, and recover the full amount thereof from the railroad company. (Code Civ. Pro. §§ 1909, 1910; *H. F. M. Ins. Co.* v. *M. & S. P. R. R. Co.*, 28 N. W. Rep. 64; 66 Wis. 58; *Fried* v. *N. Y. C. R. R. Co.*, 25 How. Pr. 285; *C. F. Ins. Co.* v. *E. R. R. Co.*, 73 N. Y. 402; *Hall* v. *R. R. Co.*, 13 Wall. 367.) The defendant is a common carrier, and as such is responsible for the loss of all freight intrusted to it, irrespective of any question of negligence or fault on its part, unless the loss occurs by the act of God or the public enemy. (*Merritt* v. *Earl*, 29 N. Y. 115; *Read* v. *Spaulding*, 20 id. 630; *Miller* v. *S. N. Co.*, 10 id. 431.) The liability of a common carrier attaches when the property is deposited with him for transportation; and where a party, who is both a common carrier and a warehouseman receives goods into his warehouse to be transported by him, his responsibility as a common carrier commences when they are received. (*Blossom* v. *Griffin*, 13 N. Y. 569; *Ladue* v. *Griffith*, 25 id. 364; *Coyle* v. *W. R. R. Co.*, 47 Barb. 152; *Rogers* v. *Wheeler*, 6 Lans. 420; 52 N. Y. 262; *Wade* v. *Wheeler*, 3 Lans. 201; 47 N. Y. 658; Edw. on Bail. § 528; Hutch. on Carriers, § 89.) Where liability as a common carrier has once attached it continues until the goods are actually delivered, or until the consignee has received notice of the arrival of the goods and neglects, for a reasonable time, to receive them. (*Gould* v. *Chapin*, 20 N. Y. 259; *McDonald* v. *W. R. R. Co.*, 34 id. 497; *McKinney* v. *Jewett*, 90 id. 267.) Where goods are delivered to a common carrier who has a freight house in which he receives goods for the purpose of shipment over his road, the presumption is that he receives such goods for that purpose, unless it is shown that they are there simply for the purpose of storage. (*Ladue* v. *Griffith*, 25 N. Y. 364; *Blossom* v. *Griffin*, 13 id. 569; *Coyle* v. *Western R. R. Co.*, 47 Barb.

152; *A. Ins. Co.* v. *Wheeler*, 5 Lans. 485; *Converse* v. *N. & N. Y. T. Co.*, 33 Conn. 177.) The delivery of the property to the defendant in this case was complete. It was deposited in the defendant's freight house for transportation, in the place pointed out by the defendant's agents for that purpose, and nothing whatever remained to be done by the shippers. (*Coyle* v. *W. R. R. Co.*, 47 Barb. 152; *Rogers* v. *L. I. R. R. Co.*, 2 Lans. 269; *A. Ins. Co.* v. *Wheeler*, 5 id. 480, 485; 49 N. Y. 616; *Merriam* v. *H. & N. H. R. R. Co.*, 20 Conn. 354, 360; *Converse* v. *N. & N. Y. T. Co.*, 33 id. 166, 181; 2 Rorer on Railroads, 1280, 1281; *Nichols* v. *Smith*, 115 Mass. 332; *R. Co.* v. *Trawick*, 15 S. W. Rep. 568; *Meyer* v. *V. S. & R. R. Co.*, 41 La. Ann. 630; *I. C. R. R. Co.* v. *Tronstine*, 64 Miss. 834; Hutch. on Carriers, §§ 89, 99, 99a, 100.) Where there is no special contract as to the liability of a common carrier of property, he is responsible for all loss or damage, except that which is caused by the act of God or the public enemy. This liability may be limited by an express agreement, but it cannot be limited by notice, even though it be brought to the knowledge of the owner. (*Dorr* v. *N. J. S. N. Co.*, 11 N. Y. 485; *Park* v. *Preston*, 108 id. 434; *Pearsall* v. *W. U. Tel. Co.*, 124 id. 256, 268; *Madan* v. *Sherard*, 73 id. 329; *Blossom* v. *Dodd*, 43 id. 264; *Perkins* v. *N. Y. C. R. R. Co.*, 24 id. 201; *Reed* v. *Fargo*, 7 N. Y. Supp. 185; 26 N. Y. S. R. 587; Edw. on Bail. §§ 554, 569; *Hollister* v. *Nowlen*, 19 Wend. 234; *Cole* v. *Goodwin*, 19 id. 251; *Clark* v. *Faxton*, 21 id. 153; *C. & A. R. R. Co.* v. *Belknap*, Id. 354.) Where a common carrier, by a special contract, has limited its liability so as to exempt it from liability from loss by fire, the carrier is not relieved when the fire results from its own negligence, or when the loss occurred by the delay of the carrier in transporting or delivering the goods. (*Read* v. *Spaulding*, 30 N. Y. 630; *Michaels* v. *N. Y. C. R. R. Co.*, 30 id. 564; *Condict* v. *G. T. R. R. Co.*, 54 id. 500; *Rawson* v. *Holland*, 59 id. 611, 619.) It was the duty of the defendant as a common carrier to equip its road with the requisite rolling stock,

engines and cars, to satisfy the ordinary demands of its business, and to send forward property received for transportation without delay. It was bound to procure and employ all the requisite facilities, to make diligent use of such facilities and means in carrying forward goods delivered to it for transportation, and failing to do so, it is liable for all damages sustained through such delay. (Edw. on Bail. § 602; 2 R. S. [7th ed.] 1567, § 36; *Read* v. *Spaulding,* 30 N. Y. 630; *Michaels* v. *N. Y. C. R. R. Co.,* Id. 564; *Condict* v. *G. T. R. R. Co.,* 54 id. 500; *Tierney* v. *N. Y. C. & H. R. R. R. Co.,* 76 id. 305; *Zinn* v. *N. J. S. Co.,* 49 id. 444.) Rule No. 7, in fine print upon the back of the shipping order and receipt, to the effect that the company would not be liable in certain cases, would not relieve it from a loss occasioned by fire, even had the shipping bill been signed by the shipper and the receipt given to him by the railroad company. (*Jennings* v. *G. T. R. R. Co.,* 127 N. Y. 450 ; *Kenney* v. *N. Y. C. & H. R. R. R. Co.,* 125 id. 425; *Nicholas* v. *N. Y. C. & H. R. R. R. Co.,* 89 id. 370 ; *Holsapple* v. *R., W. & O. R. R. Co.,* 86 id. 275.) There were no errors committed upon the trial of this action, and none of the exceptions upon the part of the defendant were well taken. (*Campbell* v. *Birch,* 60 N. Y. 214; *Jones* v. *B. F. Ins. Co.,* 61 id. 79 ; *Hine* v. *Bowe,* 114 id. 350.)

Earl, J. This action is brought to recover damages against the defendant for the destruction by fire of a large quantity of hay, alleged to have been delivered to it as a common carrier for transportation.

It is admitted that if, at the time of the destruction of the hay, it was in the possession of the defendant as a common carrier, it is liable in this action ; and the sole question for our determination is whether the hay had been so delivered to the defendant and placed in its custody as to make it liable as a common carrier. The plaintiff sues as assignee of the shippers and stands in their place.

The hay, at the time of its destruction, was in the defend-

ant's freight house at Cape Vincent, and had been placed there by the plaintiff's assignors with the consent and under the direction of the defendant's freight agent at that place. It was delivered in bales, and it was the usage and the regulation of the defendant, known and assented to by the shippers, that they were to load it into the defendant's cars. The claim of the defendant is that its responsibility as a common carrier had not attached to it at the time of the fire, for the sole reason that the duty of loading the hay into its cars rested upon the shippers, and that its duty as a common carrier could not attach until the hay was thus loaded.

There is no doubt that it is the duty, generally, of a railroad company to load the freight delivered to it for transportation into its cars, and that it cannot generally devolve this duty by any regulation upon the shipper; and that it cannot legally, as a condition of transportation generally, exact from the shipper a contract to place the freight into its cars. But we know from our own observation that as to hay, lumber, saw-logs, live animals and other bulky freight, the shipper usually loads the freight into the cars. We need not, however, now decide whether a railroad company can, as to such bulky freight, make a regulation that the shipper shall load it, because here the shippers acquiesced in the regulation and undertook the duty of loading. But we do not think that the fact that the shipper undertakes to load the freight into the cars necessarily postpones the time when the railroad company takes on the character of a common carrier. The rule as to the responsibility of the carrier is laid down in varying phraseology in a variety of cases, as follows: To render a common carrier liable for goods to be carried by him, the fact that the goods were actually delivered to him, or to some person authorized to act in his behalf, must be established. His liability attaches only from the time he accepts the goods to be carried. To complete the delivery of goods to the carrier it is essential that the property be placed in a position to be cared for, and under the control of the carrier or his agent, with his knowledge and consent. The liability of a railroad company

as common carrier of goods delivered to it attaches only when the duty of immediate transportation arises. So long as the shipment is delayed for further orders as to destination of the goods, or for the convenience of the owners, the liability of the company is that of warehousemen. The liability of a common carrier for goods received by him begins as soon as they are delivered to him, his agents or servants, at the place appointed or provided for their reception when they are in a fit and proper condition and ready for immediate transportation. If a common carrier receives goods into his own warehouse for the accommodation of himself and his customers, so that the deposit there is a mere accessory to the carriage and for the purpose of facilitating it, his liability as a carrier will commence with the receipt of the goods. But on the contrary, if the goods when so deposited are not ready for immediate transportation, and the carrier cannot make arrangements for their carriage to the place of destination until something further is done or some further direction is given or communication made concerning them by the owner, or consignor, the deposit must be considered to be in the meantime for his convenience and accommodation, and the receiver until some change takes place will be responsible only as a warehouseman. The party bringing the goods must first do whatever is essential to enable the carrier to commence, or to make needful preparations for commencing, the service required of him, before he can be made liable or subjected to responsibility in that capacity. Where goods are delivered to a common carrier to await further orders from the shipper before shipment, the former while they are in his custody is only liable as warehouseman, and his only responsibility as carrier is where goods are delivered to and accepted by him in the usual course of business for immediate transportation. The duties and the obligations of the common carrier with respect to the goods commence with their delivery to him, and this delivery must be complete, so as to put upon him the exclusive duty of seeing to their safety. The law will not divide the duty or the obli-

gation between the carrier and the owner of the goods. It must rest entirely upon the one or the other, and until it has become imposed upon the carrier by a delivery and acceptance, he cannot be held responsible for them. The entire weight of the responsibility rigorously imposed by law upon a common carrier falls upon him contemporaneously (*eo instanti*) with a complete delivery of the goods to be forwarded, if accepted, with or without a special agreement as to reward; for the obligation to carry safely on delivery carries with it a promise to keep safely before the goods are put *in itinere*. (*Judson* v. *Western R. R. Co.*, 4 Allen, 520; *Baron* v. *Eldredge*, 100 Mass. 455; *Grosvenor* v. *R. R. Co.*, 39 N. Y. 34; *O'Neill* v. *R. R. Co.*, 60 id. 138; Redfield on Carriers, 80; Angell on Carriers, sec. 129.) In *Wilson* v. *Atlanta & Charlotte R. R. Co.* (82 Ga. 386), a case somewhat relied on by defendant's counsel, a quantity of wood was piled along the line of the defendant's railroad for the purpose of having it transported thereon, and the shipper was to place the wood in the defendant's cars. There the action was brought to recover damages on account of unreasonable delay in transporting some of the wood, and, also, for the loss of some portion thereof. The plaintiff failed to recover on the ground that upon all the facts in that case the wood had not been delivered to and accepted by the railroad company for immediate shipment; and no principle was laid down in that case which can be invoked for the protection of the defendant in this. Here the hay was delivered to the defendant for immediate shipment, and it was accepted by it and placed in its freight house. It was not stored for the accommodation and convenience of the shippers. They were there ready, willing and anxious to put the hay into the cars as fast as the defendant would furnish them. There was no delay whatever by the request of the shippers or on account of any act or omission on their part. Whatever delay there was in the shipment was due exclusively to the omission of the defendant to promptly furnish cars for the transportation. Although a railroad company may not be

able promptly to transport freight delivered to it, and there may be considerable delay and even long storage of the freight until cars can be furnished, nevertheless it takes on the character of a common carrier the moment the property is delivered and received by it for immediate transportation. It can make no difference whether the railroad company was to place this hay in its cars or whether the shippers were to do that work. Whoever was to load the hay into the cars, it was delivered and received for immediate shipment, not for storage, not to be kept for the shippers, and not subject to their control, and it was not in their custody. It was simply left in the freight house of the railroad company until it could furnish cars for its transportation. It was there for immediate shipment, with nothing more to be done than to place it in the cars, and whether that work was to be done by the railroad company or by the shippers can make no difference in reason or principle. If, however, in such a case the delay in the shipment is caused by some fault of the shippers, if they are not ready to place the freight in the cars when they are furnished, and thus shipment is delayed until the property, without the fault of the carrier, is destroyed, the loss would then fall upon the shippers, because it was due to their default.

In this case, at the time of the fire, the property was stored for the convenience of the carrier and not for the convenience of the shippers, and its destruction was due to its default, and in no way to any default on their part.

We, therefore, see no reason to doubt that this recovery was right, and that the judgment should be affirmed, with costs.

All concur (PECKHAM and BARTLETT, JJ., in result), except O'BRIEN, J., taking no part.

Judgment affirmed.