Bird *v.* Railroads.

BIRD *v.* RAILROADS.

(*Knoxville.* November 3, 1897.)

1. COMMON CARRIER. *Initial carrier may limit its liability to its own line.*

An initial carrier may, when contracting for through transportation over several roads, limit its liability to injuries occurring on its own road. (*Post, pp. 721, 722.*)

Cases cited and approved: Transportation Co. *v.* Bloch Bros., 86 Tenn., 415; Railroad *v.* Brumley, 5 Lea, 401; Dillard Bros. *v.* Railroad, 2 *Ib.*, 288; Telegraph Co. *v.* Munford, 87 Tenn., 190.

2. SAME. *Intermediate carrier protected that delivers goods safely.*

A provision in a contract for the shipment of goods over several connecting lines, that in case of loss or damage that road in whose actual custody the goods are at the time of the loss or damage shall alone be responsible, inures to the benefit of an intermediate carrier which delivers the goods safely to the next succeeding carrier. (*Post, pp. 723–725.*)

Cases cited: Railroad *v.* Holloway, 9 Bax., 188; Railroad *v.* Campbell, 7 Heis., 253; Deming *v.* Merchants', etc., Co., 90 Tenn., 307; Railroad *v.* Manchester Mills, 88 *Ib.*, 653; Lancaster Mills *v.* Merchants', etc., Co., 89 *Ib.*, 2; 74 Mo., 159; 50 Ark., 396; 45 N. Y., 514; 89 N. C., 311; 98 *Ib.*, 73; 16 Mich., 79; 49 N. Y., 491; 7 L. R. A., 214.

3. SAME. *Delay in giving notice of obstruction in transportation.*

A connecting carrier, on being notified by the ultimate carrier to whom it delivers goods, which require rapid transportation, that the goods will not be forwarded until all freight charges are paid, is guilty of such negligence as will render it liable for the loss of the goods from a failure to forward them, in failing for eighteen days to notify the initial carrier or the shipper of the refusal to forward them, although the contract of shipment provides that the road in whose actual custody the goods are at the time of any loss or damage shall alone be responsible. (*Post, pp. 725–728.*)

Bird *v.* Railroads.

4. SAME. *Cannot stipulate against liability for negligence.*

A common carrier cannot lawfully stipulate for exemption from liability for the consequences of his own negligence. (*Post, p.* 727.)

Cases cited and approved: Dillard Bros. *v.* Railroad, 2 Lea, 288; Coward *v.* Railroad, 16 *Ib.*, 225; Transportation Co. *v.* Bloch Bros., 85 Tenn., 397; Railroad *v.* Wynn, 88 *Ib.*, 320; Railroad *v.* Gilbert, *Ib.*, 430; Railroad *v.* Sowell, 90 *Ib.*, 17; 17 Wall., 357; 129 U. S., 139.

5. SAME. *Initial and intermediate carriers bound for ultimate carrier's wrongful refusal to ship, when.*

The initial and intermediate carriers are bound to see' that the ultimate carrier does not make a demand for prepayment of freight and refuse to carry the goods for nonpayment of the freight, where the contract of shipment, which is accepted by the intermediate carrier, provides for through transportation without prepayment of charges. (*Post, pp.* 727, 728.)

FROM KNOX.

Appeal in error from Circuit Court of Knox County. JOSEPH W. SNEED, J.

M. F. CALDWELL for Bird.

JOUROLMON, WELCKER & HUDSON for Southern Railroad.

RICHMOND, CHAMBERS & HEAD, and WELCKER & PARKER for Cincinnati, New Orleans & Texas Pacific Railroad.

CALDWELL, J. Bird, Dew & Hale, of Powell's Station, Tenn., consigned a box of fruit trees, by

rail, from that place to themselves, in care of J. L. Hale, at George's Creek, Ky. The route covered parts of three connecting and distinct lines of railway—the Southern Railway Company being the initial, the Cincinnati, New Orleans & Texas Pacific the intermediate, and the Chesapeake & Ohio the ultimate carrier. The box never reached its destination. It was transported with reasonable expedition and care by the first and second companies over their respective parts of the route, and was by the second company delivered to the third, in good condition, at their connecting point in Cincinnati, where the third company detained it until the trees perished, and then threw them aside. Thereafter Bird, Dew & Hale, who were both consignors and consignees, brought this action against the first and second companies, and sought to recover from them jointly the value of the trees. On the trial the initial carrier was discharged, and judgment was rendered against the intermediate carrier for $146.66, the proven value of the trees. The latter carrier and the plaintiffs appealed in error.

The contract of shipment was made between the shippers and the initial carrier, and was for through transportation from the receiving point to destination. The printed form of contract, or bill of lading, then in use by that carrier, contained the provision that, "in case of loss, damage, detriment, or delay, that road in whose actual custody the goods were at the time of such loss, damage, detriment, or delay, shall

15 P—46

alone be responsible.'' Whether or not this provision was contained in the bill of lading for the trees here involved, was a matter of controversy in the Court below. The plaintiffs affirmed, and the defendants denied, that it was stricken out of the printed form before the bill of lading was made out and delivered. The trial Judge properly submitted this issue of fact to the jury, with instruction that the initial carrier was entitled to the full benefit of the provision in question, if it should be found to have been embodied in the bill of lading when delivered, and if not, that its liability was not so limited.

The jury's verdict resolved the issue in favor of this carrier, and is conclusive in this Court of the proposition that the controverted clause was really in the bill of lading when delivered.

The, first carrier had the legal right, at its election, to undertake the transportation of the goods to the terminus of its own line merely, or to their ultimate destination. It was under no legal obligation, in the first instance,. to transport them beyond the end of its own line, and, for that reason, it was authorized in law, when contracting for through transportation, to limit its liability by the clause mentioned. *Transportation Co.* v. *Bloch Bros.*, 86 Tenn., 415; *Railroad Co.* v. *Brumley*, 5 Lea, 401; *Dillard Bros.* v. *Railroad Co.*, 2 Lea, 288; *Telegraph Co.* v. *Munford*, 87 Tenn., 190; 4 Elliott on Railroads, Sec. 1432; Lawson Con. Cars., Sec. 236; Schouler's

Bail. and Cars., Sec. 603; 2 Am. & Eng. Enc. L., 866, 867.

The trial Judge, in his instruction to the jury concerning the effect of that clause in the bill of lading, if proven, erroneously limited its advantage to the initial carrier, and improperly denied the intermediate carrier the benefit of it in any event.

The contract made by the shippers and the initial carrier having been for through transportation over a particular and designated route, such of the other companies in that route as may have accepted the goods under that contract, became subject to its legal liabilities and entitled to its legal exemptions, the same as the initial carrier. Schouler says: "Where the freight contract is for through transportation, but not otherwise, each connecting carrier, as a rule, will be entitled to the benefits and exemptions of the contract made by the shipper and the first carrier." Schouler's Bail. & Cars., Sec. 604, p. 637. "If a connecting railroad company," observes Elliott, "is designated as such in the initial carrier's bill of lading, or if the bill provides that all stipulations shall inure to the benefit of all the carriers, then, having accepted the goods thereunder, without any separate agreement, it becomes virtually a party to the contract, bound by the undertaking therein, and benefited by the limitations." 4 Elliott on Railroads, Sec. 1446.

The statement of another author is as follows: "A bill of lading may provide that its stipulations

shall extend to and inure to the benefit of each and every company or person to whom the carrier issuing it may intrust or deliver the property, in which case its terms will define and limit the liability of every succeeding carrier. And in the absence of an express provision to this effect, a connecting carrier who receives the goods from another, to be forwarded to their destination, is entitled to the exceptions which the latter has made with the shipper, in case the contract with the original carrier was made for the entire route.'' Lawson on Con. Cars., Sec. 243.

Hutchinson uses this language: '' Hence it follows that whenever the carrier is bound by his contract or by law to carry the goods to the place of their consignment, all carriers who engage in the transportation for any portion of the route are entitled to all protection which the first carrier has secured by his contract with the shipper.'' Hutchinson on Cars. (2d Ed.), Sec. 273.

Our holding that the intermediate carrier now before the Court was entitled, under the facts stated, to the benefit of the first carrier's contract, is sustained, likewise, by the adjudged cases, some of which are cited: *Holliday* v. *St. L., K. C. & No. Ry. Co.*, 74 Mo., 159 (S. C., 41 Am. Rep., 309); *St. L. & I. M. Ry. Co.* v. *Weakley*, 50 Ark., 396 (S. C., 7 Am. St. Rep., 104); *Maghee* v. *C. & A. R. R. Co.*, 45 N. Y., 514 (S. C., 6 Am. Rep., 124); *Railway Co.* v. *Sharp* (Ark.),

40 S. W. Rep., 781 ; *Railway Co.* v. *Houston* (Texas), 40 S. W. Rep., 842 ; *Phifer* v. *Railroad;* 89 N. C., 311 (S. C., 45 Am. Rep., 687); *Knott* v. *R. R. Co.*, 98 N. C., 73 (S. C., 2 Am. St. Rep., 321).

The same principle was recognized, though held inapplicable, in *McMillan* v. *Mich. So. & No. Ind. R. R.*, 16 Mich., 79 (S. C., 93 Am. Dec., 208); *Adams Express Co.* v. *Harris* (Ind.), 7 L. R. A., 214; *Babcock* v. *Railroad,* 49 N. Y., 491.

This Court indirectly approved the rule in *M. & C. R. R. Co.* v. *Holloway,* 9 Bax., 188; *L. & N. R. R. Co.* v. *Campbell,* 7 Heis., 253; *Deming* v. *Merchants' Cottonpress Co.*, 90 Tenn., 307; *Railroad Co.* v. *Manchester Mills,* 88 Tenn., 653; *Lancaster Mills* v. *Merchants' Cottonpress Co.*, 89 Tenn., 2.

Nothing else appearing, the intermediate carrier would, undoubtedly, be entitled to a reversal for the error indicated. There is, however, another important aspect of the case, whose proper consideration requires an additional statement of the facts. The contract of shipment was made and the journey commenced on the 6th of November. The trees were delivered by the intermediate carrier to the ultimate carrier six days later ; but, on receiving them, the ultimate carrier "immediately" informed the intermediate carrier that George's Creek, the point of destination, was a "prepay station," and, therefore, that the trees would not be forwarded until all freight charges should be paid. With this

notice before it, the intermediate carrier rested without action in the · matter for eighteen days, and then notified the initial carrier that the trees were detained at Cincinnati for prepayment of charges. Without consent or knowledge of the shippers, the trees were so detained until they became entirely worthless; and thereafter, in January following, they were, by direction of the initial carrier, "thrown into the dump," as so much rubbish. ,

These facts fix great negligence upon the intermediate carrier and justify the. verdict against it. Its delivery of the trees was not complete in a legal sense, and, hence, did not terminate its responsibility under the contract. The acceptance by the ultimate carrier was conditional only, and the condition was distinctly stated . at the time. The ultimate carrier was under no legal obligation to concur in the contract as made by the initial, and adopted by the intermediate carrier. It declined to do so, and its declination was conclusive. Thereupon, the intermediate carrier at once became charged with the positive duty of giving immediate notice to the initial carrier or the shippers, if not with that of advancing the charges itself. It did neither, and, by its dereliction in that regard, became liable for the delay of the trees and their consequent devitalization and worthlessness.

The disputed clause in the bill of lading, though rightfully available to the intermediate carrier in its proper scope, as has been seen, did not cover this

aspect of the case nor preclude liability for the
dereliction mentioned. That stipulation was not in-
tended to relieve any carrier from responsibility for
its own negligence; nor, indeed, could it have that
effect if so intended. A common carrier cannot
lawfully stipulate for exemption from liability for
the consequences of its own negligence. Such a
contract is void because contrary to public policy.
*Railroad Co.* v. *Lockwood,* 17 Wall., 357; *Inman* v.
*So. Car. Ry. Co.,* 129 U. S., 139; *Dillard Bros.* v.
*Railroad Co.,* 2 Lea, 288; *Coward* v. *Railroad Co.,*
16 Lea, 225; *Transportation Co.* v. *Bloch Bros.,*
85 Tenn., 397; *Railway Co.* v. *Wynn,* 88 Tenn.,
320; *Railroad Co.* v. *Gilbert, Ib.,* 430; *Railway
Co.* v. *Sowell,* 90 Tenn., 17.

A "prepay station" is one at which the carrier
delivers freight to the consignee directly and without
the intervention of a local agent, and to which con-
signments are accepted alone upon the condition that
all charges for transportation be prepaid by the ship-
pers. By its contract for through transportation with-
out prepayment of charges, the initial carrier in the
present case impliedly represented to the shippers
that George's Creek, to which the trees were destined,
was not such a station, and virtually assured them
that no demand of charges would be made before the
ultimate destination was reached; and, by receiving
the goods under that contract, the intermediate carrier
impliedly made the same representation and gave the
same assurance. Both thereby became bound to see

that the other carrier should make no earlier demand, or, in case it should, to see that no injurious delay resulted therefrom. The shippers had a right to believe that their goods would be transported upon the terms stipulated.

In the Court's charge to the jury the plaintiffs were denied any benefit of this latter aspect of the case as against the initial carrier. This denial affords ground of reversal. The provision against liability for the default of other carriers did not affect this carrier's obligation, nor that of the intermediate carrier, in relation to the other matter just considered.

For the reasons indicated, the judgment of the lower Court is affirmed as to the intermediate carrier, and reversed and remanded · for a new trial as to the initial carrier.