Fort Worth & Denver City Railway Company v.
Waggoner National Bank.

Decided June 4, 1904.

**1.—Carriers—Delivery of Cattle to—Charge on Weight of Evidence.**

A requested charge that before there would be a delivery of the cattle by the shipper to the railway company and an acceptance thereof by the company the cattle must not only have been placed in the shipping pens, but the possession and control thereof must have been fixed on the railway company; and if the shippers, or those acting for them, undertook to retain the control, care and custody of the cattle through that night (while waiting to be loaded on the cars), there would not be a delivery of the cattle to nor an acceptance thereof by the company, was properly refused as being on the weight of evidence, it being for the jury to say whether the retention of the control of the cattle by the shipper to the extent shown by the evidence would exclude the conclusion of a delivery, and the question being one of the intention of the parties to the contract.

**2.—Same—Notice of Delivery in Pens.**

It was not necessary that the railway company should have had actual notice of the delivery of the cattle in the pens if the jury believed under the evidence to that effect that there was a prior agreement that the shipper should deliver the cattle by putting them in the pens at the time they were put there.

**3.—Same—Negligence—Ordinary Care.**

Charge held to fairly present the rule that the railway company in maintaining its stock pens and gates would only be required to use ordinary care to keep them in a reasonably safe condition.

**4.—Same—Injury from Vicious Propensities.**

A charge that if the cattle were injured by getting together and breaking out of the stock pens, and they did not do so from the defects in the gates and fastenings thereof, but from their inherent viciousness, to find for the defendant, sufficiently exempted the defendant from liability if the injuries occurred on account of plaintiff's having confined vicious and unruly bulls in the pens.

Appeal from the District Court of Wilbarger. Tried below before Hon. S. P. Huff.

*Stanley, Spoonts & Thompson* and *J. H. Barwise, Jr.,* for appellant.

*Tolbert & Berry,* for appellee.

SPEER, Associate Justice.—This is the ordinary action for damages to a shipment of 340 head of cattle from Vernon, Texas, to Kansas City. Plaintiff's petition alleged as grounds of negligence for basis of recovery that plaintiff's assignor, E. J. Cooper, made an arrangement with appellant's local agent at Vernon to furnish the necessary cars for the transportation of the cattle in question, on September 12, 1902, and that pursuant to such arrangement the cattle were delivered into the pens of the appellant, and accepted by it, on the evening of that day. That the pens were defective and improperly built, and that the gates were insecurely fastened in the posts, and otherwise in a defective condition. That the cattle were not loaded out until the evening of the succeeding day, and that while they were thus confined in the pens, because of the defects above referred to, plaintiff's cattle got together and

fought and bruised each other, and escaped from the pens, and scattered over the adjacent country for miles around. There was judgment for the plaintiff for the sum of $859.71.

Our conclusions of fact, so far as such conclusions may be necessary, will appear in connection without discussion of the various assignments of error.

It is first complained that the court erred in refusing to submit the following special charge: "Before there would be a delivery of the cattle by the shipper to the railway company, and before there would be an acceptance thereof by the railway company, the cattle must not only have been placed in the pens, but the possession and control thereof must have been fixed upon the railway company, and if the shippers, or those acting for them, undertook to retain the control, care and custody of said cattle through the night of September 12, 1902, then there would not be a delivery of the cattle by the shipper, nor an acceptance thereof by the railway company." Two answers may be given to this contention. (1) The court in the third paragraph of its charge instructed the jury that the liability of a railway company as a common carrier attaches whenever the shipper has done all that is required of him to prepare his property for shipment, and has delivered the same to the railway company for transportation, and it has been accepted. (2) We think the requested charge was upon the weight of the evidence, in that it was for the jury to say whether the retention of the control of the cattle by the shipper to the extent shown by the evidence would exclude the conclusion of a delivery of the cattle to the appellant. It was a question of the intention of the parties to the contract, and the jury should not be hampered in its consideration of this character of question by a charge such as the one under consideration.

The next assignment of error is also predicated upon the refusal of the court to give a special charge, which is follows: "If you find and believe from the testimony that the arrangement was to obtain cars and ship the cattle out on September 13th, and that the cattle were brought in and penned on September 12th by the shipper, and that the railway company had no notice or knowledge thereof, and that the pens of the railway company were used by the shippers for their own convenience in holding the cattle until the time of shipment, then you will find for the defendant." The testimony for plaintiff was to the effect that an agreement had been entered into by which the cattle were to be penned, as they were, on September 12th; and that the agent of appellant had actual notice that the cattle had been placed in the pens, and also had actual notice of the defective condition of such pens and gates. An examination of the testimony for the appellant shows that while the agent denied knowing that the cattle had actually been placed in the pens, yet it is not denied that the agreement and understanding was that the cattle were to be placed in the pens on the 12th as contended by the plaintiff. So that in this state of the evidence the mere fact that the appellant did not have actual notice, if it did not, that the cattle

had been placed in the pens would not relieve it from liability, and the charge was therefore properly refused.

Special charges 2 and 4 requested the submission of the rule of law, that in maintaining its stock pens and gates the appellant would only be required to exercise ordinary care to keep them in a reasonably safe condition. In this respect the court in its main charge directed the jury as follows: "If you shall find and believe from the evidence that E. J. Cooper and plaintiff delivered said cattle in accordance with the alleged contract, and that the defendant received them for shipment as alleged, and in accordance therewith said cattle were placed in the stock pens of defendant prepared for receiving and holding cattle for shipment, and that said pens were insecure, and by reason of such defects as alleged in said pens said cattle escaped and got together and were thereby damaged, and you further find that such defects, if any, were the proximate cause of the injury and damage, if any, to said cattle, and that keeping and maintaining the pens in the condition they then were was negligence on the part of the defendant, then you will find for the plaintiff the damages sustained," etc. The court had previously defined negligence. This, we think, was a fair presentation of the matter sought to be reached by the special charges refused.

Special charge number 6, wherein appellant sought to excuse itself from liability if the injuries occurred on account of plaintiff's having confined vicious and unruly bulls in the pens, was properly refused, because this defense was sufficiently presented in the eleventh paragraph of the main charge, wherein the jury was told that if "the cattle were injured by getting together and breaking out of the stock pens of the defendant, and they did not do so from the defects in the gates and fastenings thereof, but from their inherent viciousness," to find for the appellant. Clearly the court did not err in refusing to summarily direct the jury to find against appellee as to the cattle alleged to have been lost. While the evidence does not show beyond a possibility that the cattle were lost, yet it is sufficient, we think, to support such a conclusion.

We do not think there was any error in admitting the testimony of the witnesses Cooper and Dyer, with reference to the extent of the damage to the cattle in question. In some of the cases, notably the Wright case, 21 S. W. Rep., 80, a witness' conclusion as to the amount of damages sustained by stock has been excluded where the evidence did not indicate that the witness in forming his estimate had taken into consideration only such elements of damage as were recoverable in the case. But we know of no case where the witness shows himself qualified to express an opinion, and the evidence further indicates that in giving his estimate he takes into consideration only the legitimate elements of damage, such testimony has been rejected. On the contrary, we think it ought to be admitted. Chicago R. I. & T. Ry. Co. v. Halsell, 35 Texas Civ. App., —, 9 Texas Ct. Rep., 941, and cases there cited. An examination of the bills taken to the court's rulings upon this testimony

discloses, we think, that in making the estimates of damage, the witnesses considered nothing that was improper to be considered in arriving at their conclusion. The record otherwise shows a sufficient familiarity upon the part of the witnesses with cattle and their values, to enable them to testify in this respect.

We think the evidence in this case sufficient to warrant the finding of the jury in effect that the cattle were delivered to and accepted by the appellant in its pens on September 12th; that the pens and gates were defective, and that such defects existed by reason of the negligence of the appellant, and that appellee has sustained damage in the amount of the verdict by reason of such negligence.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.