ST. LOUIS, B. & M. RY. CO. et al. v. LANE.*
(No. 6859.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 17, 1923. Rehearing Denied Feb. 7, 1923.)

**1. Carriers ⚖➡219(1)—Oral contract valid and binding on "connecting carrier."**

Under Vernon's Ann. Civ. St. Supp. 1922, art. 731, defining connecting carriers as all carriers transporting property received by either, for shipment or transportation between points within the state on a contract of carriage, and permitting proof of contract by evidence other than bills of lading, or other instruments issued by the carrier, a verbal contract for through shipment will bind each carrier whether the route is chosen by shipper or carrier.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Connecting Carrier.]

**2. Carriers ⚖➡219(5)—Liability of initial and connecting carriers begins on delivery to carrier.**

Under Vernon's Ann. Civ. St. Supp. 1922, art. 732, each connecting carrier is liable for damages occurring during transportation, and, where there was a contract to furnish cars for shipment of cattle at a specified time and place, the transportation began when the cattle were delivered under the contract.

**3. Carriers ⚖➡226—Initial and connecting carriers properly joined in suit for damages.**

In an action for damages to shipment of cattle for failure to furnish sufficient cars and failure to furnish proper and suitable pens and facilities for receiving and caring for the stock and negligence in loading and rough handling while in the cars, there was no misjoinder, under Vernon's Ann. Civ. St. Supp. 1922, arts. 731, 732, as contended by the connecting carrier, where plaintiff claimed no damage as the result of the initial carrier's delay in furnishing the cars as agreed.

**4. Carriers ⚖➡219(1) — Connecting carrier bound by oral contract where it accepted shipment without writing.**

Where a connecting carrier which was the only possible route between points of origin and destination accepted a shipment of cattle from the initial carrier without a written contract, it thereby became a party to the parol contract of shipment made between the initial carrier and shipper and is bound by its terms.

**5. Carriers ⚖➡219(5)—Liability of connecting carrier commenced when cattle were placed in cattle pens for shipment.**

Where the contract between shipper and initial carrier was oral, the liability of both the initial and the connecting carriers began when the cattle were placed in the cattle pens at the point of origin, and the connecting carrier is subject to the initial carrier's liabilities and entitled to its legal exemptions.

**6. Pleading ⚖➡236(6)—Allowance of trial amendment discretionary with the court.**

In an action by a stock shipper against initial and connecting carriers for damages to shipment, the allowance of an amendment to the petition during the trial amplifying and explaining the allegations of the petition was within the discretion of the court.

**7. Appeal and error ⚖➡1041(2)—Allowance of trial amendment of petition not prejudicial where no showing by adverse party of inability to avoid surprise.**

Defendant carriers sued for damage to a shipment of cattle were not prejudiced by the allowance of a trial amendment to the petition amplifying and explaining its allegations, where, in their application for a continuance on the ground of surprise, no showing was made that they could not readily procure the necessary testimony to meet the allegations if a short recess were taken, particularly where the trial lasted a number of days after the trial amendment was filed, during which time the defendants might have overcome their surprise.

**8. Evidence ⚖➡471(24)—Testimony of shipper as to effect of loading on cows not objectionable as conclusions.**

In an action by cattle shipper against carriers for damage to shipment, his testimony as to the effect of the manner of loading on cows in a certain condition, objected to as the conclusion of the witness, and not because witness was not an expert, was properly admitted; the testimony being as to facts, not conclusions.

**9. Witnesses ⚖➡268(13)—Cross-examination properly limited.**

In an action by a shipper against carriers, the court properly refused to permit unreasonable cross-examination as to market value of cattle, the only effect of which could be to prolong the trial.

**10. Carriers ⚖➡223—Availability of other route no defense in action for negligent damage to shipment.**

In an action by a cattle shipper against initial and connecting carriers for damages to shipment, testimony in behalf of the carriers that plaintiff could have driven his cattle across country to a shipping point on the connecting carrier's line, thus not using the initial carrier's line at all, was properly excluded as utterly impertinent; the contributory negligence of shipper in using either of defendant's lines not being a defense to the action.

**11. Appeal and error ⚖➡1048(6)—Error in not permitting more than one attorney to participate in cross-examination not available where no injury shown.**

Error cannot be predicated on the action of the court in limiting cross-examination of plaintiff's witnesses to that attorney who at the time was conducting the examination, where no injury appears to have resulted to appellants therefrom.

⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction March 28, 1923.

**12. Carriers ⊚≈219(5)—Ownership of stock pens where carrier received cattle held immaterial in action against initial carrier for damage to shipment.**

In an action by cattle shipper against initial and connecting carriers, the ownership of cattle pens at the point of origin is immaterial, where the cattle were placed in such pens with the knowledge and consent of the initial carrier and were received by it in such pens.

**13. Carriers ⊚≈227(3)—Incompleted written contract properly excluded in action for damages to shipment under oral contract.**

In an action by cattle shipper against initial and connecting carriers for damages to shipment under an oral contract with initial carrier, where there was no evidence tending to show any written contract, the court properly excluded a written contract prepared by the carrier but not signed nor, so far as the evidence discloses, ever known to plaintiff.

**14. Evidence ⊚≈323(4)—Market reports at distant points not admissible to show value of shipment.**

In an action by cattle shipper for damages to shipment, live stock market reports, showing the value of cattle at a point 500 miles distant from points between which shipment was made, was properly excluded as not pertinent to the value of the shipment.

**15. Trial ⊚≈308—Reading portions of testimony to jury at its request after retirement not improper.**

In an action by cattle shipper against carriers for damage to shipment, there was no impropriety in the action of the court, at the request of the jury after their retirement, to have read to them by the court's stenographer in the presence of the court and the parties a portion of the testimony of a certain witness.

On Motion for Rehearing.

**16. Carriers ⊚≈227(1)—Petition sufficiently alleging through stock shipment.**

Petition by shipper of live stock alleging receipt by initial carrier and acceptance of shipment for safe carriage over its road and defendant's connecting line of road from and between designated stations sufficiently alleged through shipment.

**17. Evidence ⊚≈22(3)—Courts will take judicial notice of connecting lines of carriers.**

Texas courts judicially know that there is, and can be, only one connecting carrier with the S. B. & R. V. G. Ry., the initial carrier of a shipment between Rio Hondo, in Cameron county, and Edinburg, Hidalgo county.

Appeal from District Court, Hidalgo County; Hood Boone, Judge.

Action by S. E. Lane against the St. Louis, Brownsville & Mexico Railway Company and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Graham, Jones, Williams & Ransome, of Brownsville, and W. G. B. Morrison, of San Benito, for appellants.

Seabury, George & Taylor, of Brownsville, for appellee.

FLY, C. J. This is a suit for damages alleged to have accrued to appellee by reason of a failure to furnish sufficient cars for a cattle shipment, and failure to furnish proper and suitable pens and facilities for receiving the cattle and caring for them, and negligence in loading and rough handling while in the cars. The suit was filed by appellee against the San Benito & Rio Grande Valley Railway Company and the St. Louis, Brownsville & Mexico Railway Company and was submitted on special issues to a jury, and on the answers thereto judgment was rendered in favor of appellee as against the San Benito & Rio Grande Valley Railway Company for $1,465 and against the St. Louis, Brownsville & Rio Grande Railway Company for the same sum, and against them jointly for the full amount, and each road was given a judgment over against the other for any sum over $1,465 it might be compelled to pay.

A brief containing 264 printed pages has been filed by appellants, containing 90 assignments of error, and 87 propositions, and although 9 pages of the brief of appellants are consumed in stating the nature and result of the suit, there is nothing to indicate the amount of the judgment or against whom it was rendered. That was disclosed in the statement under proposition No. 87. Sixty-seven authorities are cited by appellants and 42 by appellee. This is the state of the record as presented by the briefs.

We gather from the statement of facts that the cattle in question were delivered to the San Benito & Rio Grande Railway Company and were received from it by the St. Louis, Brownsville & Mexico Railway Company and were damaged in the sum found by the jury through the negligence of the appellant as alleged by the appellee and found by the jury.

[1-3] It is provided in article 731, Vernon's Supp. 1922 Civ. Stats., that all carriers of Texas over whose lines property is transported which has been received by either of such carriers for shipment or transportation between intrastate points on a contract for carriage acted upon by such carriers shall be considered connecting lines and agents of each other. The article also provides that proof of a contract may be made by evidence, other than by a bill of lading, waybill, receipt, check, or other instrument issued by the carrier. Under this statute a verbal contract for a through shipment to point of destination would bind each of the connecting carriers whether the route was chosen by shipper or carrier. Under the terms of article 732, either or all of the connecting carriers which the person damaged may elect to sue are held liable for any dam-

---

⊚≈For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

age sustained anywhere during transportation of the property, and there shall be no apportionment of damages unless the shipper requests it, but any connecting line may recover from the negligent line the damages not accruing on its line. The statute makes each connecting carrier liable for all damages occurring during transportation. and where there is a contract to furnish cars at a certain time and place, the transportation is held to have begun when the cattle were delivered under the terms of the contract. If under the terms of the contract appellee was to have his cattle in the pens, to be provided by appellant at a certain time and place, and he so placed his cattle, the cattle were then accepted for shipment by the initial carrier and the transportation began under the articles cited. Railway v. Waggoner National Bank, 36 Tex. Civ. App. 293, 81 S. W. 1050. It was alleged that the cattle were delivered to the initial carrier at Rio Hondo, in Cameron county, on November 3, 1920, for shipment on its line to San Benito. and from there on the line of the connecting carrier to Edinburg, in Hidalgo county, Tex. There were allegations that the initial carrier had agreed to have six cars at Rio Hondo on October 27, 1920, and that appellee had gathered his cattle on that date, but there is no allegation of delivery until November 3, 1920. Under the allegations the cattle were not delivered nor accepted until November 3d. and it is distinctly alleged that on that date the initial carrier "agreed to safely and securely carry, convey and transport the same from Rio Hondo, Cameron county, Tex. to Edinburg. Hidalgo county, Tex." The pleadings fail to indicate that any damages accrued to appellee by reason of the delay in furnishing the cars, but show that the damages resulted from defective pens, rough handling. and delay in the transportation. There was no misjoinder of parties or action as claimed by appellants in their first proposition, but the parties were properly joined under the statute cited. What has been said in connection with the first proposition disposes of the second, third, fourth, fifth, and sixth propositions adversely to appellants.

[4, 5] There could be but one connecting carrier to the initial carrier in a shipment of cattle between the two points named, and the second railroad must have been in contemplation of the parties when the contract of shipment was entered into, and when the second road accepted the cattle without a written contract it became a party to the parol contract made by and between the agent of the initial carrier and appellee and is bound by its terms. The liability of the connecting carrier began when the cattle were placed in the cattle pens at the starting point. Elliott on Railroads, § 1446. The rule is that where a contract of shipment is for through transportation over a designated route, and beyond the

lines of the initial carrier, each of the companies on the route accepting the freight under the contract becomes subject to the initial carrier's liabilities, and entitled to its legal exemptions under the contract. Bird v. Railway Co., 99 Tenn. 719, 42 S. W. 451, 63 Am. St. Rep. 856. Our statute places connecting carriers in Texas in the same position.

The liability of the initial carrier began as soon as the cattle were delivered to it at the place appointed for such delivery. Elliott on Railroads, § 1403; Moore on Carriers. § 130; London Ins. Co. v. Rome Railroad Co., 144 N. Y. 200, 39 N. E. 79, 43 Am. St. Rep. 752. If the liability for the safe transportation began when the cattle were placed in the pens for shipment, the liability of the connecting carrier began under the statute.

The matter of failure to furnish cars was eliminated so far as the connecting carrier was concerned by a charge requested by such connecting carrier and given by the court. The jury were required to find. and did find, damages arising from the negligence of appellant "in receiving, handling. transporting and delivering said cattle," and did not find any damages arising from a failure to furnish cars.

[6] In his first amended petition, appellee, after alleging in detail the delivery of six cars of cattle to the initial carrier on November 3d, alleged the delivery of a seventh carload on November 7, 1920. In a trial amendment the allegation as to the seventh car of cattle was amplified, and it was also pleaded that the stock pens for shipping cattle from Rio Hondo station were at a point on the road known as Fernando, and the pens there were known as the Rio Hondo pens, and used as the shipping place for cattle for Rio Hondo station, and appellee was told by the agent at Rio Hondo that the cattle should be placed in the pens at Fernando, which was situated about three miles from Rio Hondo at the terminus of the railroad. There were no pens at Rio Hondo or nearer than Fernando. In the trial amendment it was alleged that the cattle in the seventh car were eight days on the road from Fernando to Edinburg. Amendment of a pleading during a trial is held to be within the discretion of the trial judge. Dublin v. Railway Co., 92 Tex. 535, 50 S. W. 120; Slaughter v. Hall, 63 Tex. Civ. App. 473, 133 S. W. 496; Pitzer v. Decker (Tex. Civ. App.) 135 S. W. 161. The trial amendment was sufficient to permit proof. The seventh proposition is overruled.

The petition was sufficient to charge negligence as against both railroad companies, and the eighth, ninth, tenth, eleventh, twelfth, and thirteenth propositions are overruled.

[7] There was no new matter included in the trial amendment filed by appellee. It merely explained the situation and location

of the pens at Rio Hondo and amplified the pleading as to the seventh car. Appellants must have known all the facts pleaded before announcing ready for trial, and the witnesses necessary to meet the original or first amended original petition would be known to meet all matters alleged in the trial amendment. Appellants could not have been surprised at the allegations in that pleading. They sought a continuance of the cause on the ground of surprise, but made no showing that they could not in a short time get the necessary testimony to meet the allegations if a short recess in the trial were taken. The trial lasted for a number of days after the trial amendment was filed, and appellants might have overcome their surprise in that time. The fourteenth, fifteenth, and sixteenth propositions are overruled.

The seventeenth, eighteenth, nineteenth, twentieth, twenty-first, and twenty-second propositions are mere reiterations of matters discussed hereinbefore, are not meritorious, and are overruled.

[8] It was not error to permit appellee to give an opinion as to the effect of certain loading on cows in a certain condition. The evidence was not objected to because not that of an expert, but because it was the conclusion of the witness in which there was no merit. He stated facts, not conclusions. The twenty-third proposition is overruled.

[9, 10] The cross-examination of Lane as to market value of cattle, as proposed by appellants, was unreasonable, and the court properly denied such a line of cross-examination, which would have had no result except to prolong a trial, unnecessarily prolonged anyway, and interpolate other trivial matters among the numerous ones dragged into this record. Neither was it permissible to permit testimony to the effect that appellee could have driven his cattle to San Benito or Harlingen and loaded them there and not have used the initial carrier's line at all. This testimony was utterly impertinent. Appellee might have driven his cattle all the way to Edinburg and avoided both lines, but that was not a defense to the negligence of the common carriers which under the law he saw fit to utilize. It may have been contributory negligence for appellee to use either or both of the two lines, in the light of the facts; but we do not think that it was a defense to this action. The twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, and twenty-ninth propositions are overruled.

[11] The thirtieth proposition assails the action of the court in confining objections to testimony to the attorney for appellants who at the time was conducting an examination, and this is made the subject of assignment and proposition; but it does not appear that any injury resulted to appellants thereby. The time consumed in the trial and the voluminous record would indicate that matters would have been bettered by other denials of expansion.

[12] It was a matter of no concern or importance whatever as to the ownership of the pens at Fernando. The cattle were placed in them with the knowledge and consent of the initial carrier and were received by it in the pens. The thirty-first and thirty-third propositions are overruled.

[13] Appellee alleged that he had a contract with the initial carrier and proved an oral contract as he had the right to do under his pleadings. There was no evidence tending to show that a written contract was entered into by appellee, and it would have been the grossest error to have permitted appellants to have introduced in evidence a written contract prepared by it but not signed nor, so far as the record discloses, ever heard of by appellee. He shipped under a parol contract alone and knew nothing of any written contract. The numerous decisions cited fail to sustain the thirty-second proposition, and it is overruled.

[14] The court very properly refused permission to appellants to use the "Fort Worth Daily Live Stock Reporter" in order to show by its reports what the value of cattle was in Fort Worth on the 2d, 3d, and 4th of November, 1920. The market value of cattle in Fort Worth, over 500 miles distant from Rio Hondo or Edinburg, had no more pertinency to the facts of this case than the value of cattle on those days in New York or Boston. The thirty-fourth proposition is overruled.

The thirty-fifth, thirty-eighth, thirty-ninth, and fortieth propositions are utterly without merit and are overruled.

[15] The jury requested, after their retirement, that the evidence of one Cantu on a certain point be read to them by the court reporter. We can see no impropriety in this, and the authorities which appellants deemed of so much importance as to copy with a pen into the brief have no relevancy or pertinency to the contention of appellants. The evidence of Cantu had been taken down by a court stenographer, and it was read to the jury in the presence of the court and parties. The thirty-sixth and thirty-seventh propositions are overruled.

The forty-first to the eighty-seventh propositions, inclusive, are overruled. They seek to present matters already discussed and disposed of herein. Our conclusions of fact dispose of a number of them. Every question of any importance should have been fully presented to this court in a brief of 50 or 60 pages, with not more than 12 or 15 propositions of law discussed. It is merely an ordinary case of damages arising from a cattle shipment.

The judgment is affirmed.

### On Motion for Rehearing.

Appellant cites the cases of Railway v. Lock (Tex. Civ. App.) 209 S. W. 181, and

Railway v. Cox (Tex. Civ. App.) 221 S. W. 1043, six times in its motion for rehearing, but in spite of that fact neither has any applicability to the facts of this case. In the first-cited case the initial carrier refused to be bound beyond its own line and insisted on limiting its liability to its own line; the court held there was no through shipment. No such facts appear in this case.

[16] In the other cited case it was held that in order to recover from a terminal carrier for damages caused by preceding carriers the plaintiff must plead that the shipment was made on a contract for through carriage. In appellee's petition herein it was alleged that the cattle were received by the initial carrier at Rio Hondo "and there accepted to be safely and securely carried and conveyed over its said road and the defendant's connecting line of road from Rio Hondo, Cameron county, Tex., to Edinburg, Hidalgo county, Tex." If that language does not mean a through shipment, it cannot be expressed. There was no contract confining damages to the line of the initial carrier.

[17] This court correctly held that there was, and could be, only one connecting carrier with the initial carrier, between Rio Hondo, in Cameron county, and Edinburg, Hidalgo county. That fact is judicially known to any Texas court.

It was sufficiently alleged that there was a seventh car of cattle, and while the initial carrier may have received and transported the cattle without knowing that they were placed in the pens, we are not willing to so find, but insist on the conclusion that the cattle were placed in the pens at San Fernando with the knowledge and consent of the initial carrier.

There is no merit in the motion, and it is overruled.